## JOHN T. MOORE ET AL. V. A. BRYANT ET AL.

### No. 1718.

1. **Independent Executor—Taxes—Limitations.**—Where an independent executor has paid the taxes upon lands of the testator in his possession, he is entitled to be reimbursed therefor by the heirs before the land can be recovered by them; and the statute of limitations will not bar the claim in such case.

2. **Same.**—Nor can the heirs invoke limitations to defeat a claim by such executor against the property in his hands for a debt due him by the estate and growing out of a promise or contract of the testator.

3. **Claim Against Estate—Promise to Devise Property.**—Services rendered and expenses incurred in behalf of a person on the faith of his promise to devise property in consideration thereof constitute a valid charge against his estate.

4. **Evidence—Adoption.**—Where the paper adopting a child as an heir has been lost and the county records destroyed by fire, the issue of adoption may be determined from circumstantial evidence.

APPEAL from Bosque. Tried below before Hon. J. M. HALL.

*S. H. Lumpkin,* for appellants.—1. Where a party renders valuable service to aged and feeble persons, such as nursing, boarding, and caring for them, and paying out money for their use and benefit (more than natural duty required) upon the promise and mutual understanding of a legacy, such services and advancements afford in law and equity a basis for a valid claim against the indebted persons' estate. Schoul. on Wills (1887), sec. 453; Schoul. on Dom. Rel., 3 ed., sec. 274; Shakespeare v. Markham, 11 N. Y., 311; Lisle v. Tribble, 17 S. W. Rep., 742; Healey v. Simpson, 20 S. W. Rep., 881.

2. The adoption, or the agreement to adopt Mrs. Jennie A. Moore, formerly known as Jennie Abney, by John Abney and his wife Mary Abney, about the year 1850, being a material issue in the case, all facts, acts of parties, and their declarations tending to establish said issue, were admissible. Rev. Stats., art. 2; Eckford v. Knox, 67 Texas, 200; Healey v. Simpson, 20 S. W. Rep., 881; Parks v. Caudle, 58 Texas, 220; 1 Greenl. on Ev., 14 ed., sec. 38a; 19 Am. and Eng. Encyc. of Law, secs. 19, 22.

*William M. Knight, S. R. Carruth,* and *A. A. Hughes,* for appellees.

1. The adoption of one man's child as the heir of another being a

thing unknown to the common law, and having never been introduced in Texas until the Act of January 16, 1850, it was the duty of the court to require defendants to prove that Jennie Williams had been adopted as our statute required, and to exclude any testimony tending to show an adoption by any other method. Rapalje & L. Law Dict., title "Adoption;" Bouv. Law Dict., title "Adoption;" 1 Am. and Eng. Encyc. of Law, title "Adoption," and notes.

2. The plaintiffs pleaded both limitation and stale demand to the claims attempted to be set up, and the evidence clearly shows that if any such claims ever had any legal existence they were barred by lapse of time, and the statute of frauds prevented their enforcement, because of a parol agreement with reference to the conveyance of land. Kelley v. Settegast, 68 Texas, 13; Heidenheimer v. Bauman, 84 Texas, 174; Hunt v. White, 24 Texas, 652; Pasch. Dig., secs. 23, 178; Howze v. Howze, 19 Texas, 554; In re Wills, 10 Am. State Rep., 457.

STEPHENS, ASSOCIATE JUSTICE.—The title to the 200 acres of land in controversy was acquired during the marriage of John and Mary Abney, who lived and died thereon without issue, the former dying in the year 1878, and the latter in January, 1887. This suit was brought by the heirs of Mary Abney, appellees, December 5, 1890, to recover the land from John T. Moore, the surviving husband, and the other appellants, the surviving children of Jennie A. Moore, who, after living with said John Abney and wife as their adopted child from her infancy, also died on the land in the year 1884.

About 1850 a writing was entered into by John Abney and the father of Jennie A. Moore, then Williams, by which said Abney undertook to adopt her as the child and heir of himself and Mary Abney. This occurred in Rusk County, where the parties then lived, but whether the instrument had ever been acknowledged and recorded seems to have been incapable of proof, except by circumstantial evidence, the deed and probate records of that county from 1846 to 1851 having been destroyed by fire March 5, 1878.

July, 1879, Mary Abney made a will, by which, after directing the payment of all her just debts, her entire estate, both real and personal, was bequeathed to Jennie A. Moore in the terms following: "If my sister, Angeline Thomas, should survive me, that she is to be supported out of my estate for and during her natural life, and at her death the said Jennie A. Moore is to have my entire estate, with all the profits arising therefrom, to her and her heirs forever." John T. Moore was named as executor, and relieved from giving bond, with power to administer the estate without action in the Probate Court, beyond the probate of the will and the return of an inventory and appraisement of the estate. The will was duly probated, and the inventory and appraisement made, in March, 1887. The Angeline Thomas referred to in the will, as well as Jennie Moore, died prior to

Mary Abney.  John Abney died intestate, and there seems to have
been no administration upon his estate.

The appellants have continuously resided upon the land, claiming
the same by virtue of the adoption of Jennie A. Moore as heir, as well
as under the will aforesaid.  As a further defense to this action, and
as a predicate for affirmative relief, they allege, in the seventh para-
graph of their answer, and in their trial amendment, in substance,
that for a long time before the death of John Abney and his wife
Mary, and her sister Angeline Thomas, appellants were in quiet pos-
session of the lands in controversy; and that, in pursuance of an
agreement and understanding to that effect, they, and especially John
T. Moore, had cared for the Abneys and Angeline Thomas in their
respective conditions of declining age and ill health, paying all the
expenses incident thereto, aggregating the sum of $4400, in considera-
tion of which it was understood and agreed that said land should de-
scend or be devised to Jennie A. Moore and her heirs, the appellants,
it being understood that she was the adopted heir as aforesaid.  It
was further alleged, that John T. Moore had paid all the taxes on the
land up to the institution of this suit, amounting to $235, and that the
will had been made and probated, making him independent executor
as above set forth.  The prayer was, in the event the land should be
recovered from them, that they be allowed a reasonable compensation
for the care, labor, and expense aforesaid.

The first error is assigned to the action of the court in sustaining de-
murrers, including the statute of limitations, to the defense and cross-
action thus interposed.  This assignment, we think, must be sustained.
It was certainly the duty of John T. Moore, as independent executor,
to pay the taxes and preserve the property committed to his keeping,
and appellees should not have been permitted to recover the posses-
sion of the property without reimbursing him.  The case is not anal-
ogous to that in which a trespasser volunteers to pay taxes on the
property of another.  As to this part of the claim, it is clear that the
statute of limitations presented no bar.

It seems reasonable, also, that if John Abney, in consideration of
services rendered and to be rendered to him, entered into the agree-
ment alleged, which contemplated payment at the death of the sur-
vivor, and his relict and sole heir, recognizing this agreement, further
agreed, in consideration of services rendered and expenses incurred
on her own account and that of her sister, that the land should be de-
vised for the benefit of appellants, the claim for reasonable compensa-
tion and reimbursement (especially for her burial expenses and ex-
penses of last sickness) became a liability against her estate.

By her will, if, on account of the prior death of Jennie Moore, the
devise to her lapsed, the estate was nevertheless placed in the custody
of the independent executor, charged with the payment of her just
debts (including this obligation).  To that extent, at least, the will
took effect.  The further question then arises, was the claim barred at

the filing of the answer, January 19, 1891; that is to say, where an estate is indebted to an independent executor who claims the property in his hands for the satisfaction of such debt, can the heirs invoke the statute of limitation to extinguish the debt, and thereby divest the property of the express trust created by the will of their ancestor?

Without undertaking to find authority directly in point, none having been cited in the briefs, upon principle and by analogy we venture the opinion that this question should receive a negative answer. While limitation bars the remedy by suit, it does not destroy the debt. Fievel v. Zuber, 67 Texas, 275. See also Northcraft v. Oliver, 74 Texas, 162, and that line of cases.

It will be borne in mind that the will deprived the Probate Court of administrative jurisdiction, and made the independent executor trustee of the estate for the purpose of paying the debts charged upon it. The remedy of any other creditor to prevent his claim from becoming barred was a suit against this trustee to enforce its payment. Not so with the trustee himself as creditor of the estate. When, where, and whom should he sue? Manifestly his remedy was ample without suit, his position being analogous to that of a pledgee, who can not be deprived of the possession of the property till the debt, though barred, is paid. Hudson v. Wilkinson, 61 Texas, 606.

In so far as the other appellants acquired rights by devolution from their deceased mother, the disability of nonage would seem to be an answer to the limitation plea as to most, if not all, of them, the rights so acquired at her death not being, according to our interpretation of the contract as alleged, enforceable by suit till after the death of Mary Abney.

The further question may become an important one upon another trial, though the pleadings do not seem to have been drawn with that end in view, whether the alleged contract, based upon a valuable consideration, to devise this land to Jennie Moore and her heirs, if clearly proven, should not be specifically enforced, even if it be conceded that the devise lapsed by reason of the death of Jennie Moore prior to that of the testatrix.

If the will was of a contractual nature, executed upon a valuable consideration, and at a time (1879) when, but for the subsequent death of Mrs. Moore, it would clearly have accomplished the purpose of the contract, should a court of equity permit the devise to lapse? Conceding the full force of the technical rule which construes "heirs" in dispositive instruments to be words of limitation and not words of purchase, we are still not prepared to hold that the heirs of a devisee entitled to the devise as a matter of right, by virtue of a contract, should be deprived of the benefits of such a contract on account of the death of such devisee. In such case, their rights do not depend upon an instrument purely testamentary in character.

This case arose in Georgia: There was a verbal agreement between the father and the son, whereby the son should convey to the father a

lot of land, in consideration of which the father should devise to the son two other lots of land.   The son conveyed his lot to the father, and the father devised his two lots to the son; but the will by which he did this was void, having but two witnesses to it, while the law required three.   The Supreme Court held the son entitled to specific performance, using this language:   "The father made in writing what he thought was his will, and in that writing he said he gave the two lots of land in controversy to the son.   The contract on his side was, that he should give these two lots to his son.   Here, then, is a writing that may serve to help to prove the contract.   The case is such, therefore, that it is not left wholly at the mercy of parol evidence.   True, this writing was void as a will, but that did not prevent it from being good to help ·to prove the contract," citing authorities.   Maddox v. Rowe, 68 Am. Dec., 535, and cases cited in notes.

It seems to us that the principles of equity which have been so often applied in the construction of the statute of frauds, in order to prevent fraud, might have application, under proper pleadings and sufficient proof, to this case.

Complaint is made of the manner of submitting special issues to the jury in reference to the authentication and registration of the adoption paper, which, though lost, the jury found had been executed on the last day of 1849 or the first day of 1850.   While it may have been proper for the jury to find whether this paper had been recorded, after being authenticated or acknowledged as deeds were required to be, before or after the act of adoption of January 16, 1850, took effect, March 23, 1850, it was not necessary for them to find the exact date, etc.   In view of the loss of the adoption paper, the destruction of the records of Rusk County, the date of the passage and taking effect of the law, and the great lapse of time throughout which Jennie was treated as an adopted child, these issues should have been determined from all the circumstances in evidence; and the questions propounded by the court were not, therefore, capable of the very definite affirmative answers as to dates which they seemed to contemplate.

The acts and declarations of the Abneys, including the manner in which they treated Jennie, were proper circumstances for the consideration of the jury in determining the entire issue of adoption.   Bounds v. Little, 75 Texas, 316; Crain v. Huntington, 81 Texas, 614.

As this important issue was submitted in its different phases without any charge, even without informing the jury that they were to answer the questions from all the facts and circumstances in evidence, it does not seem to us that it was submitted in a manner entirely fair to appellants, though we can not approve the special charge requested by them in that connection.

Should the jury, however, find upon another trial that, by the contract of adoption, John Abney bound himself to adopt Jennie Williams as his heir, but that he failed to have the same authenticated and recorded as provided in the Act of January 16, 1850, the further ques-

tion might then arise (should such relief be prayed for), whether appellants would not be entitled to a decree for the specific performance of the undertaking to so adopt her?

The authorities cited by appellants in support of the affirmative of this proposition seem to sustain it, particularly the case of Healey v. Simpson, 20 Southwestern Reporter, 881, which contains a forceful statement by the Supreme Court of Missouri of the reasons for such holding. But whether that relief would be affected by the statute of limitations, it not having been specifically prayed for on the last trial, is another unbriefed question in the case; and we do not in the present state of the record and briefs feel it incumbent on us to do more than invite attention thereto.

Whether the jury should find the adoption complete or the court should decree it so, it would only have the effect of vesting in appellants title to a moiety of the land, as it would not make them the heirs of Mary Abney, but only of John.

We conclude that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 27, 1895.