## COOMBS *et al.* v. COOK.

No. 1945.    Opinion Filed December 3, 1912.

Rehearing Denied January 28, 1913.

(129 Pac. 698.)

1. **EVIDENCE—Adoption—Best Evidence.** Where, under provisions of a statute, an adoption is effected by order or decree of the court, the records of such court constitute the best evidence by which such adoption may be established.

2. **SAME—Loss of Record.** Where the records of the court have been destroyed by fire, proof of the contents of such records by parol testimony may then be made, and circumstantial evidence introduced, including acts and declarations of an adopting parent, relative to such adoption, for the purpose of establishing the adoption.

3. **ADOPTION — Parol Evidence — Sufficiency.** Where many years have elapsed since an adoption proceeding was had, and the records of the court have been destroyed by fire, during which time the judge of the court and the clerk thereof have died, proof by a witness that he was present in court at the time of the proceeding, handed the petition for adoption to the judge, heard the order of the court thereon made, and, after the petition and order had been spread of record, read the same, and that it decreed an adoption of the child, and where proof established that the child lived from said time, until the death of the adopting parent, with the

adopting parent, was recognized by the adopting parent as her child, and was referred to by her as her adopted child, and where the jurisdictional facts appear, a finding that the adoption occurred, in the absence of any contrary evidence, should be sustained.

4. **APPEAL AND ERROR**—Change of Theory. One who has tried his case in the trial court upon one theory, and lost, will not be permitted on appeal to this court to change front and try to prevail upon a different theory.

(Syllabus by the Court.)

*Error from District Court, McCurtain County;*
*D. A. Richardson, Judge.*

Action by Leslie Coombs and L. D. Owsley against Betsy Cook, *nee* Durant. Judgment for defendant, and plaintiffs bring error. Affirmed.

*Montgomery & O'Meara,* for plaintiffs in error.

*Spaulding & Carr,* for defendant in error.

HAYES, J. Plaintiffs in error brought this action in the court below to quiet title to an undivided half interest in a certain tract of land consisting of 225 acres, situated in McCurtain county in this state, and to obtain a decree of partition. They allege in their petition in the court below that the land in controversy was originally allotted by one Isabel O'Bannon, a member of the Choctaw tribe of Indians by blood, who, after taking said allotment, died in the month of March, 1907. She left surviving her no children, no brothers or sisters, and neither father nor mother. She died intestate, and left surviving her husband, Jack O'Bannon, and one niece and one nephew, to wit, Mary and Alfred James, who are the children of a deceased brother, and five children of a deceased sister. Plaintiffs allege that, by virtue of a conveyance from the nephew and niece of the deceased brother, they are the owners of the undivided half interest in Isabel O'Bannon's allotment, and that the five children of decedent's deceased sister are the owners of the other half interest. All of said children are made parties to this proceeding. They allege further that Jack O'Bannon, the husband of deceased, is claiming to hold said land by virtue of some conveyance from one Betsy Cook, who claims some title and interest

therein, but allege that neither Jack O'Bannon nor Betsy Cook have any interest or title whatever in said land, and pray that Jack O'Bannon and Betsy Cook be required to plead whatever title or interest therein they claim.

Defendant Jack O'Bannon, by his separate answer filed, makes only the following claim of interest in the land: He alleges that he and Isabel O'Bannon lived together as husband and wife until her death, and during said time resided upon the land in controversy; that he cleared up some of the land and put a portion thereof in cultivation, and put other valuable and lasting improvements thereon; that he is now in possession of the land, and has not received any pay for the improvements, and he asks that it be decreed that he has a lien on the lands for the value of the improvements. By agreement of the parties, his claim is eliminated from the case until the issues between the other parties are disposed of.

Defendant in error, by her separate answer, alleges that she is the sole owner in fee simple of the lands in controversy by reason of the fact that the said Isabel O'Bannon, in the year 1892, duly adopted her (the said Betsy Cook) as her child; that such adoption was made in the county court of Towson county, Choctaw Nation, which was a court of record; that she is a citizen of the Choctaw Nation; that all the records and written evidence of said adoption have been destroyed and are beyond the reach, and cannot be secured by her; but that she would offer testimony at the trial to prove such adoption. Upon these facts she alleges that she is the sole heir of Isabel O'Bannon, and asks for a decree against the plaintiffs and her co-defendants, adjudging her the owner of the title to the land, subject to whatever equities, if any, the defendant Jack O'Bannon may have. The other defendants made no answer and filed no other pleading of any character.

The case was tried to the court without a jury. Before any evidence was heard, the following stipulation was made in open court:

"For the purposes of this trial, it is stipulated in open court between attorneys for the plaintiffs and the attorneys for Betsy

Cook that the land in controversy was the allotment of Isabel O'Bannon, who was enrolled as a full-blood Choctaw, and who died intestate in McCurtain county. It is further stipulated that the defendant, Betsy Cook, formerly Betsy Durant, is enrolled opposite enrollment No. 2083 as a full-blood Choctaw, and said certificate is made a part of this stipulation. It it further stipulated that Davis James, Rachel James, and Margaret Keel have conveyed to the plaintiffs their interest in the land described in this petition, which interest depends on the ascertainment of the question of adoption in this case. It is further stipulated that the only issue of law and fact between the defendant, Betsy Cook, and the plaintiffs is the fact and sufficiency of the adoption pleaded as a separate answer of Betsy Cook."

The trial court found the issues generally in favor of Betsy Cook and against the plaintiffs, and found specially that Isabel O'Bannon was a Choctaw Indian, and that in the year 1892 she adopted Betsy Cook, as alleged in her answer, in accordance with the laws of the Choctaw Nation; that she died in March, 1907, after having taken as her allotment the land in controversy; that she left surviving her as her kinsmen only the persons named in plaintiffs' petition; and that Betsy Cook, as her legally adopted child, is the sole and only heir to her estate, and rendered judgment in her favor accordingly, from which judgment only plaintiffs in error, plaintiffs below, prosecute this appeal.

All of defendant's evidence, by which the fact of her adoption was established, was parol evidence, made after proof that the records of the court in which the order of adoption was made had been destroyed. Plaintiffs rely for reversal of the cause upon four contentions: First, that the evidence fails to establish that there was ever a record in any court that had jurisdiction; second, that, if such record ever existed, the evidence does not establish that it is lost and can not, by the exercise of proper diligence and search, be found; third, that the contents of such record has not been shown; fourth, that, if the evidence establishes an adoption under the laws of the Choctaw Nation, the statutes of that nation, in so far as made part of the evidence at this trial, fail to show that an adoption of a child has the effect to confer upon it the right to inherit from the adopting parent. The first three of these contentions may be discussed together.

Defendant in error pleaded in her answer and proved the following tribal statute of the Choctaw Nation:

"Any person or persons who may wish to adopt an illegitimate or orphan child or children shall file a petition to that effect with the clerk of the county they may reside in, which shall remain on file for 30 days; and, if no legal or just cause is shown why the petition shall not be granted, then the county judge shall grant the petition and cause the same to be recorded in the county clerk's office, after which the adoption shall be as binding as if done by special act of the general council."

Where, under the provisions of the statute, an adoption is effected by an order of the court, the records of such court constitute the evidence by which such adoption may be established. *Quinn v. Quinn,* 5 S. D. 328, 58 N. W. 808, 49 Am. St. Rep. 875.

In the absence of proof of such order of adoption by the court, as provided by the statute, no presumption of adoption will arise from the fact that a child has lived with a person, who is not his parent, and has been treated as a child; but, where the records of the court or the adoption papers have been destroyed or lost, proof of the contents of such records or papers by parol testimony then may be made, and circumstantial evidence, including acts and declarations of the adopting parent relative to such adoption, may be admitted. *Haworth v. Haworth et al.,* 123 Mo. App. 303, 100 S. W. 531; *Moore et al. v. Bryant,* 10 Tex. Civ. App. 131, 31 S. W. 223; *Kennedy v. Borah,* 226 Ill. 243, 80 N. E. 767.

All the evidence relative to defendant's adoption is practically uncontroverted by plaintiffs. The evidence establishes that she is an illegitimate child of a woman who was killed while defendant was a very small infant; that defendant was taken by Isabel O'Bannon, when defendant was between one and two years of age; that she constantly lived with Isabel O'Bannon until the death of Isabel O'Bannon; that during all of this time she was treated by deceased as her child, and deceased had at different times made statements that she was her adopted child. All the evidence establishes that both defendant and Isabel O'Bannon, since the birth of the former, have continuously resided in Towson county of the Choctaw Nation until the admission of the

state, at which time the territory constituting that county be-
came part of Choctaw county of this state. The exact date when
the order of adoption was made by the tribal county court is
not clear; but all the evidence places it somewhere between the
first part of the year 1892 and the early part of the following year.
One witness by the name of Wilson, who was district judge
of the Choctaw Nation for Towson county at the time of the
admission of the state, testifies that he had resided in Towson
county during his entire life; that in 1892 and 1893 his father
was county judge of said county; that he had been familiar with
the records and affairs of the county court of that county; that
the records of that court, made from 1890 to 1894, were burned;
that the county clerk kept said records at his home, as there was
no office for them to be kept in at the time; and that the clerk's
residence was burned and the records of the court destroyed, so
that they were never brought back to court. He did not re-
member the exact date of the fire, but that it occurred along
about 1894 or 1895. During this time Henry Williams was clerk
of the county. Both he and the judge of the county court at the
time of the adoption proceeding have been dead for a number
of years. Another witness, who for a number of years was an
officer of Towson county, either in the capacity of sheriff, deputy
sheriff, or special ranger, testifies also that the records of the
county court during the years 1892 and 1893 were burned up;
the exact date of the fire he could not give, but thought it was
about the year 1897, which date he fixed by the fact that on the
1st day of October, 1898, he qualified as sheriff of that county.
He testifies that, after the burning of the county clerk's residence,
the records were never seen by any one. The same witness testi-
fies that he had known both defendant and Isabel O'Bannon prac-
tically ever since the birth of defendant. During the greater por-
tion of said time, he has lived near them. He was in court in the
early part of 1892, when Isabel O'Bannon handed to him a peti-
tion for the adoption of defendant as her child, which witness,
upon request of Isabel O'Bannon, handed to the court. Witness
did not read the petition then, but did so after it had been spread
upon the records of the court. He was present when the court

announced its order permitting the adoption, and afterwards read the order of adoption upon the records of the court. He could not remember all the contents of the record, but does remember that it provided that: "The adoption of such child to be accepted as the adopted child of Mrs. O'Bannon. The proceeding was complete of the adoption of this child, Betsy Durant, to Mrs. O'Bannon." The same witness testifies that, during her entire life thereafter, Isabel O'Bannon treated defendant as her child, and stated that she had adopted her, and that the child would inherit everything she left at her death. Other witnesses testified that they were present in court when a petition for the adoption was presented, and when an order was made thereon. None of them had read the order as entered upon the records of the court and was able to testify as to the contents of the record; but all the evidence tends to corroborate the testimony of the one witness who testified that he read the order, and that it did decree an adoption.

We think the foregoing evidence sufficient to establish the existence of the record of adoption and the contents thereof. It is true that defendant does not show that she has made any search for such record; but the evidence of the foregoing mentioned witnesses, to the effect that the records were burned, is corroborated by other evidence. One witness who had married about the time this adoption occurred, testified that he had made a search for the records of the office in order to obtain a copy of his marriage license, and had been unable to find the records; that they had been burned. It is true that secondary evidence as to the contents of records or written instruments is not admissible as a general rule, without a showing, on the part of the person offering such evidence, that he has made a diligent effort to locate the written record or instrument, and has been unable to do so because of the fact they are lost or destroyed, but the law does not require a useless thing; and, where the evidence is sufficient that the record or written instrument has been destroyed by fire, there can be no reason or good purpose subserved by requiring the person offering secondary evidence thereof to make search for such destroyed instrument or record. The evidence

does not harmonize in all of its details, such as the exact date of the adoption and the date of the fire; but there is nothing surprising about this, when it is considered that all these transactions occurred from fifteen to twenty years ago, and among a class of people whose form of government and records thereof were crude, and who were without local newspapers to chronicle local court events and to impress them generally upon the minds of the people.

The fourth contention made by plaintiffs in error does not seem to have been presented to the trial court, and it is stated by counsel for defendant in error, and not denied by plaintiffs in error's counsel, that the trial in the lower court proceeded upon the theory that, if the fact of adoption was established, defendant in error, under the law, inherited as sole heir the land in controversy. What effect an adoption under the statute has upon the right of an adopted child to inherit from its adopting parent is not disclosed by the foregoing statute pleaded and proved, which states that adoption made in county courts shall be as binding as done by special act of the general council. It is well settled that the rights of an adopted child to inherit are determined by the statute under which the adoption is made; and some of the authorities hold that such statutes are to be strictly construed against the right of inheritance. 1 Cyc. 932. This court does not take judicial knowledge of the tribal laws of the Five Civilized Tribes of Indians; and, where they are relied upon to establish a right, they must be pleaded and proved (*Bruner v. Sanders,* 26 Okla. 673, 110 Pac. 730) ; and we cannot therefore look to the tribal laws, as published, for additional light upon the question of whether, under such law, defendant in error, by reason of her adoption, became the heir of Isabel O'Bannon; but the statement of her counsel that the case was tried upon the theory that such was the effect of an adoption, assuming the adoption to have been made, is supported by the record in this case and by the stipulation made in open court set forth above in this opinion. This stipulation was dictated in open court by counsel for plaintiffs in error, and specifically provides:

"It is further stipulated that the only issue of law and fact between the defendant, Betsy Cook, and the plaintiffs is the fact

and sufficiency of the adoption pleaded as a separate answer of Betsy Cook."

It is well settled that one may not try his case before the court upon one theory, and, having lost there, shift to another theory in this court on appeal. *Hamilton v. Brown*, 31 Okla. 213, 120 Pac. 950; *Smith v. Colson*, 31 Okla. 703, 123 Pac. 149. The wisdom. and justice of this rule finds exemplification in this case, for defendant no doubt relied upon the assumption of all the parties that, if she was able to show that she had been adopted, she was the only heir of deceased, and therefore undertook to introduce no more of the tribal statutes than was necessary to establish the adoption; for the introduction of any of such tribal statutes under the issues as defined by the stipulation, and under the theory upon which the trial of the case proceeded, would have been wholly unnecessary and immaterial.

The judgment of the trial court is accordingly affirmed.

TURNER, C. J., and WILLIAMS, J., concur; KANE and DUNN, JJ., absent, and not participating.