WILLIAM W. GIPSON and ELIZABETH DILLENDER v. NELLIE OWENS and ROBERT JOHNSON OWENS, Appellants.

Division One, December 30, 1920.

1. **PLEADING: General Allegation: Demurrer Ore Tenus: Motion for Definiteness.** An allegation that "Arabelle Newson took Jasper Gipson into her home and adopted him as her legally adopted heir" would be good against a demurrer *ore tenus* as a statement of statutory adoption, but subject, perhaps, to a motion for more definiteness of detail.

2. **CHILDREN: Adoption: By Deed.** The only mode of adopting a child known to the law in 1871 was by a deed executed, acknowledged and recorded in the county of the residence of the person executing the same, as in the case of a conveyance of real estate; and a married woman was then capable of adopting by joining her husband in such a deed.

286 Mo.—3

3. ———: ———: Contract to Adopt: Character of Proof. Prior to 1871, and since, courts of equity have specifically enforced contracts to adopt a child made upon sufficient consideration, like the relinquishment of his custody and services by his parents and services thereafter rendered by him to the adopting parent; but courts have been exacting about the cogency of the evidence necessary to prove such a contract was made, but the character· of the proof is unimportant where the other evidence clearly shows there was no contract to be enforced.

4. ———: ———: By Deed: Partition. An action for partition based on plaintiff's claim that their father had been adopted by deed does not lie if defendants are in adverse possession, for issues of statutory adoption involve legal and not equitable principles.

5. ———: ———: Lost Deed: Oral Proof. A deed to adopt a child, or a contract to adopt, when proved to have been made and afterwards lost or destroyed, may be established by evidence of the best character available, and even by oral testimony, and the terms of such a lost deed or contract may be proved by secondary evidence like the terms of any other lost document.

6. ———: ———: ———: Character of Proof. Evidence to establish a lost contract to adopt a child must be clear, cogent and convincing; and if reliance is upon a lost or destroyed deed of adoption, all of its material parts must be established by the testimony.

7. ———: ———: ———: ———: Instruments of Uniform Contents. A deed of adoption is not a document or record of uniform contents, but may contain whatever conditions and considerations the parties may choose to insert, and in consequence there can be no satisfactory ·proof of its contents unless all its material parts and necessary elements are substantially proved.

8. ———: ———: ———: Insufficient Proof. Where no witness testified to having seen either a deed of adoption signed and acknowledged by the adopting parents, or the record of one, and there is no evidence that the husband of the adopting mother signed the deed, a judgment finding that the said mother adopted the child is not supported by sufficiently substantial evidence, although there is evidence that a deed of adoption was recorded and that the record was afterwards destroyed by fire.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker*, Judge.

REVERSED AND REMANDED.

*John T. McKay* and *Hall & Billings* for appellants.

(1)   Legal adoption could only be procured by following the law as it existed, in 1871, which required a deed duly acknowledged, and recorded in the county of the residence of the adopter; therefore, plaintiffs must allege the execution, acknowledgment and recording of the deed and that it was recorded in Dunklin County, Missouri, and having failed their petition states no cause of action.   (a) This objection may be raised for the first time in the Supreme Court.   Paddock v. Somes, 102 Mo. 226;   Hudson v. Cahoon, 193 Mo. 547;   Hubbard v. Slavens, 218 Mo. 598;   Marx v. Watson, 168 Mo. 133. (b) The ultimate and issuable facts must be stated in the petition if not supplied by answer or reply.   Sec. 1794, R. S. 1909;   Conway v. Reed, 66 Mo. 346;   Newham v. Kenton, 79 Mo. 382;   Ross v. Ross, 81 Mo. 84;   Rush v. Brown, 101 Mo. 586;   McCadam v. Scudder, 127 Mo. 345; Sidway v. Missouri Co., 163 Mo. 342;   Redd v. Bott, 100 Mo. 62;   Paddock v. Lance, 94 Mo. 283.   (c) Legal adoption is statutory adoption by deed executed, acknowledged and recorded.   Sec. 599, R. S. 1879;   Sarazin v. Railway, 153 Mo. 479;   Beach v. Bryan, 155 Mo. App. 51, 57;   Hockaday v. Lynn, 200 Mo. 461.   (d) The petition had to allege that the statutory deed was executed, acknowledged and recorded, and that the same was lost or destroyed, and the record of the deed was burned, otherwise it is fatally defective.   Newham v. Kenton, 79 Mo. 382;   Ross v. Ross. 81 Mo. 84;   Rush v. Brown, 101 Mo. 586;   Reed v. Bott, 100 Mo. 62;   Paddock v. Lance, 94 Mo. 283;   Grantham v. Gossett, 182 Mo. 651;   Rosenwald v. Middlebrook, 188 Mo. 58.   (e) Partition is a proceeding at law which can be converted into an equitable action by answer, but in the case at bar no such answer was filed.   Watson v. Priest, 9 Mo. App. 263; Green v. Walker, 99 Mo. 68. (f) The petition commingles law and equity in one count and is bad.   Sec. 1795, R. S. 1909;   Henderson v. Dickey, 50 Mo. 161;   State ex rel. v.

Tittman, 103 Mo. 553. (2) There were but two ways known to the law at the time laid in this alleged adoption whereby plaintiffs can become entitled to a distributive share of the estate of Arabelle Newsom, the common source of title herein. They are as follows: first, by deed of adoption; and, second, by contract of adoption and performance on the part of the person adopted. (a) Sec. 599, R. S. 1879. (b) Respondents have declared on a legal adoption which means by deed duly acknowledged and recorded, and they are held to prove this cause and no other. Henry County v. Citizens Bank, 208 Mo. 209; Henry County v. Farmers Bank, 208 Mo. 239; Newham v. Kenton, 79 Mo. 382; Ross v. Ross, 81 Mo. 84; Paddock v. Lance, 94 Mo. 283; Spindle v. Hude, 247 Mo. 48; Reed v. Bott, 100 Mo. 62; Bank v. Roher, 138 Mo. 369; Joyce v. Growney, 154 Mo. 253. (c) The plaintiffs cannot state one cause of action and recover on another, and as they have based their petition on legal adoption, they must prove legal adoption. Reed v. Bott, 100 Mo. 62; Weil v. Posten, 77 Mo. 284; Hutson v. Tyler, 140 Mo. 264. (d) The proof of legal adoption where the deed is not offered and where as in this case an attempt was made to show the records were burned after the execution of the deed, must show the deed was duly acknowledged and recorded and must be clear, cogent and have such probative force as to leave no doubt in the mind of the chancellor that the deed was executed, acknowledged, and recorded as the law provides, and mere evidence of declarations of Arabelle Newson, made in her lifetime that she intended to adopt Jasper Gipson, plaintiffs' deceased father, as her son and heir and that she had adopted him, and that she went to Kennett to adopt him and after she returned that she had adopted him, if true, and the further fact that Jasper Gipson resided with her as a member of her family from the age of ten or twelve years until he attained his majority, if true, was not sufficient to establish the fact that Arabelle Newsom did in fact execute and acknowledge a deed of adoption. Steel v. Steel, 161 Mo. 566; Kinney v. Mur-

ray, 170 Mo. 674; McElvain v. McElvain, 171 Mo. 244; McKee v. Higbee, 180 Mo. 658; Grantham v. Gossett, 182 Mo. 651; Rosenwald v. Middlebrook, 188 Mo. 58; Russell v. Sharp, 192 Mo. 285; Wales v. Holden, 209 Mo. 552. (e) The evidence shows Arabelle Newsom was a married woman in 1871 at the time of the alleged legal adoption, and no proof that her husband joined her, and if the evidence was sufficient to establish the execution, acknowledgment and recording of a deed of adoption it would still be void as to her. Sarazin v. Railway, 153 Mo. 479.

*Smith & Seed* for respondents.

(1) The petition states facts sufficient to constitute a cause of action. (a) This is an action for partition and the appellants in their answer deny that respondents have any title, and this formed an issue to be decided by the chancellor. The chancellor acquired jurisdiction to determine the question of title as requested by appellants, and decided that respondents had an interest in the property as heirs of an adopted son, and after acquiring jurisdiction for one purpose, proceeded to partition the lands as prayed for in respondents' petition, and to complete justice between the parties, and determine all matters in issue, even adjudicating matters of law and equity. Waddle v. Frazier, 245 Mo. 391; Dameron v. Jameson, 71 Mo. 97; Savings Institution v. Collonious, 63 Mo. 290; Pares v. Haley, 61 Mo. 462; Hagan v. Bank, 182 Mo. 342. (b) Where plaintiffs have an equitable title and ask the aid of the court of equity to establish it, if the court ascertain that he has an interest, and what that interest is, the doctrine that partition cannot be had (when the defendant is in adverse possession of the premises), does not apply, the court having acquired jurisdiction of the cause may proceed to determine the whole controversy by decreeing a partition of the premises. Dameron v. Jameson, 71 Mo. 100; Rozier v. Griffith, 31 Mo. 171; Banard v.

Keathly, 230 Mo. 209. (c) Defendants by answering over waived any defects in the petition except its failure to state any cause of action, all reasonable intendments being indulged in favor of the petition after verdict and judgment. Hoover v. City of Fulton, 177 Mo. App. 95; Metropolitan Ry. Co. v. Express Co., 145 Mo. App. 371. (2) Courts of this State hold that adoption can be had in four ways: (a) By deed of adoption, which is statutory adoption. (b) By contract of adoption and performance on the part of the person adopted. (c) Where acts and conduct of parties are such that the adopter and those claiming under him are estopped from disputing it. Horton v. Throll, 183 Mo. App. 677; Fisher v. Davidson, 271 Mo. 195; Buck v. Meyer, 195 Mo. App. 287. (d) By collateral agreement. Sharkey v. McDermott, 91 Mo. 647. (3) Wagner's Statutes 1872, sec. 1, page 256, was the law in force at the time of the alleged adoption. This statute was interpreted in Lindsley v. Patterson, 177 S. W. 826. "This statute only authorizes the husband and wife to adopt a child or children in the manner and form therein stated, but it does not prevent them or either of them from adopting a child or children in any other lawful manner." The learned judge in the same case in referring to Lynn v. Hockaday, 162 Mo. 111, said, "I wish, with due deference to all, to vigorously dissent" from the holding that there was no common-law adoption. (4) Under our practice, if sufficient facts are stated to entitle the party to relief, the conclusions of the law the pleader may draw from them, and the particular relief he may ask, may, if necessary, be disregarded, and in such cases the court may grant any relief consistent with the case made by the plaintiff and embraced within the issues. Sec. 2100, R. S. 1909; Sharkey v. McDermott, 91 Mo. 657; Buck v. Myer, 195 Mo. App. 287. (5) Judgment and decree of the court is not for the wrong party and is not against the evidence, the weight of the evidence, the law, and the law under the evidence. Signaigo v.

Signaigo, 205 S. W. 23; Fisher v. Davidson, 271 Mo. 195; Buck v. Myer, 195 Mo. App. 287; Lindsey v. Patterson, 177 S. W. 826; Thomas v. Maloney, 142 Mo. App. 193; Horton v. Throll, 183 Mo. App. 677; Hockaday v. Lynn, 200 Mo. 456.

GOODE, J.—This action was filed to have partitioned the west half of the northwest quarter of Section Thirteen, and twenty-five acres a part of the east half of the east half of the northeast quarter of Section Fourteen, all in Township Twenty, north, Range Nine, east, and containing 105 acres. So the description reads in the petition and in the decree.

Plaintiffs are the only children and heirs of Jasper Gipson, who died in 1895, intestate. Elizabeth Dillender, one of the plaintiffs, is a married woman, but the first name of her husband is not shown in the record.

The defendant Nellie Owens is the widow, and the defendant Robert Johnson Owens is the son, of. C. J. Owens, called "Lum" and "Lummy" Owens by the witnesses, and we presume his first name was Columbus. He died intestate May 5, 1916.

There was another defendant in the case, the Missouri State Life Insurance Company, which did not join in the appeal. Said C. J. or Lum Owens and his wife, the defendant Nellie Owens, executed a deed of trust on the land in controversy in favor of said life insurance company, on October 27, 1915, to secure a debt of two thousand dollars.

Unless the facts to be stated presently show the two plaintiffs own an undivided half interest in said land as the children of their deceased father, Jasper Gipson, Robert Johnson Owens owns the entire interest subject to the said deed of trust and to the dower right of his mother, Nellie Owens. The common source of title was Arabelle Newsom, who was the mother of C. J. Owens, she having been married to a man named Owens prior to her marriage to her second husband, Patrick Newsom,

or "Paddy" Newsom, as he is called by the witnesses. The two defendants assert that C. J. Owens inherited the entire fee to said land from his mother, Arabelle Newsom, but the plaintiffs assert that said Arabelle had adopted as her son their father, Jasper Gipson, and that said Jasper having died in the lifetime of said Arabelle, they, her grandchildren, inherited an undivided one-half interest in the land. Regarding the matter of adoption, the petition alleges: "That on or about the —— day of ————, 1871, Jasper Gipson was legally adopted by Arabelle Newsom, who was then a resident of Dunklin County, Missouri, and that said Arabelle Newsom took said Jasper Gipson into her home and adopted him as her legally adopted child, and said Jasper Gipson resided in the home of said Arabelle Newsom and treated her with the respect and affection due from a dutiful child to a mother so long as the said Jasper Gipson lived, and was known by the name of Jasper Newsom until he became of legal age and was self-supporting."

The answer denies that Jasper Gipson ever was adopted by Arabelle Newsom. The finding on the issue in the judgment or decree, as it is termed in the record, was as follows:

"That Jasper Gipson, about the year 1871, when he was about twelve years of age, was adopted by Arabelle Newsom as her child, and that he was at all times thereafter treated by her as her child until the date of his death, which was some time in the year 1895; that at the time the said Arabelle Newsom adopted the said Jasper Gipson as her child she took him into her household and assumed the control, custody, and care of the said Jasper Gipson, and held him out and introduced him as her adopted child so long as he lived; that the said Jasper Gipson was taken into the home of the said Arabelle Newsom when he was about twelve years old and remained as a member of her family until he was married; that he at all times rendered to Arabelle Newsom such obedience and service, and such affection and

attention, as are usually rendered to a parent by a child; that the said Arabelle Newsom bestowed upon the said Jasper Gipson such care, affection and attention as are usually bestowed upon a child by a parent; that said Arabelle Newsom acknowledged said adoption to her friends and neighbors, both before and after her husband's death, and by her acts and words ratified said adoption after the year 1889; and until her death in 1909 she claimed that she had adopted Jasper Gipson, and that he was her adopted child.''

Jasper Gipson was a half-nephew of Arabelle Newsom, the son of her half sister by a first marriage. Said half sister made a second marriage to a man named Prewitt, and was living with him in Tennessee at the time of her death, the date not being proved. Prewitt owned land somewhere in Arkansas and when his stepson Jasper Gipson was a lad ten or twelve years of age, Prewitt passed through Dunklin County on his way to see the land. He took his step-son with him, paid a brief visit to Arabelle and Paddy Newsom and left the boy with them while he was absent to look after his land. During that time the boy told the Newsoms he had been mistreated by his step-father, and when the latter returned in two or three weeks, the Newsoms refused to let him have the boy.· In fact, they had the house guarded for a week by the neighbors to prevent Prewitt from taking him. Prewitt went back to Tennessee, and later two of the boy's uncles came to Dunklin County and endeavored by a legal proceeding to take the boy away from the Newsoms. Whatever the proceeding may have been, and the nature of it is not disclosed, it resulted in favor of the Newsoms and they retained the custody of the child.

According to the testimony of two or three witnesses, who base their statements on what Mr. and Mrs. Newsom told them, some kind of proceeding was gone through by the Newsoms for the purpose of adopting the boy, but whether the attempt to adopt occurred before

the uncles made the aforesaid effort to get the custody of the boy, or after that case, is not clearly shown. These events happened from forty-five to forty-eight years before the trial of the present case, and the witnesses were not always definite about the dates of occurrences or their sequence. The court below found the child was adopted in 1871, but if he was ever adopted it may have been at any time between 1870 and 1872, or maybe later, according to what witnesses we believe; for some of them testified the adoption occurred before the destruction of the court and deed records of Dunklin County by the burning of the courthouse in 1872, and others that it occurred after the fire. No witness had ever seen a deed of adoption, nor did any witness testify that Arabelle or Paddy Newsom had said a deed of adoption was executed by them. What the witnesses said about this matter was that both the Newsoms declared at different times, Mrs. Newsom the oftener, that Jasper Gipson had been adopted by them; that they had fixed it so he could not be taken away from them; that he would "heir" their property just like their son Lum would; that the two boys were their only heirs, and similar expressions. Mrs. Newsom survived her husband for many years and used such expressions down to the time of her death, according to some witnesses.

Jasper Gipson continued to live on the Newsom farm and with the Newsoms as long as Paddy Newsom lived, and most of the time thereafter until Jasper's death in 1895. He was given the same education as Lum; that is, he went to a country school awhile and learned to read and write, and but little more.

A house was built on the premises—the evidence suggests that it was a log house—and when Jasper married the first time he moved into that house and his children, the two plaintiffs, were born there. After their mother's death, the date of which is not given, Jasper Gipson worked for a year at a cotton gin for a man named Eulitt and he and his children lived in Eulitt's

home during the year.   Jasper married for a second wife an aunt of Eulitt.   She only lived a few months after the marriage and later he married a third time. After her death, he went back to the Newsom place to live and died there in 1895.   His aunt, Arabelle Newsom then took the two children, kept them until her death, and afterward they lived on the place with her son Lum until they married.   In fact, the plaintiff William W. Gipson lived there until about a year before the filing of the present action.   The record is vague about whether they lived on the land in question when the suit was begun, but it is stated in the brief filed in their behalf that "the suit was tried as a chancery proceeding because appellants *are in possession of the premises* and by their answer deny that respondents have any right or title in the land."   (Italics ours).   As long as William Gipson stayed on the land after the death of his aunt, he paid Lum Owens rent, but said he didn't know his rights as the heir of his great-aunt, Arabelle Newsom, or he wouldn't have paid rent—that he had an idea about his rigths, but didn't know how to assert them.

Reverting to the question of adoption, we will state the evidence which has any tendency to prove a deed of adoption was executed.   As already said, no witness testified to seeing a deed or hearing directly from either Mr. or Mrs. Newsom that they had made one.   A witness, A. G. Cagle, a clergyman, testified that on one occasion he asked Jasper this question:  "Have you any record after the courthouse burned of your adoption?'  He said, 'I guess so.' "   This witness further testified as follows:

"Aunt Arabelle got A. Henderson, who is now at Granite, Oklahoma, to take her and Lummy Owens and Jasper to Kennett to have him adopted, and when they come, they entered suit.

"Q.   Just a minute, do you remember the date that they went to Kennett?   A. No, I don't know the date they went.

"Q. Do you know how they went? A. Went in a wagon.

"Q. Do you know the year? A. Somewhere in 1870. . . .

"Q. Who were along on this trip to Kennett? A. No one, as far as I know, outside of Henderson and his wife and Aunt Arabelle and C. J. Owens and the boy.

. . .

"Q. And, now, all you know about any part of this adoption is only hearsay, is it not, Mr. Cagle? A. Yes sir. I was not an eye witness, no.

"Q. You never saw any deed of adoption? A. No sir.

"Q. You don't know whether they adopted him or not. A. No sir. All I know first and last and always is that they went out and said they were going for that purpose and came back and said they did it. That is all I know.

"Q. Well, who said they did? A. Aunt Arabelle, C. J. Owens, and Jasper from time to time told me.

"Q. Jasper was just a boy at that time? A. Sure.

"Q. Did he tell you that when he got back? A. No, no. Jasper did after he got to be a young man.

"Q. Did he tell you that they had any deed of adoption? A. No, just said he was adopted.

"Q. You knew it took some kind of an instrument in writing to adopt a child, didn't you? A. Sure.

"Q. You did not see a deed of adoption? A. No."

The foregoing testimony of Rev. A. G. Cagle, and the testimony regarding the statements of Paddy and Arabelle Newson (mainly of the latter) that they had fixed it so the boy couldn't be taken away from them, and their oft-repeated declarations that he was their adopted son, and would "heir" along with Lum, constitute the evidence tending to show an adoption, except the testimony of George W. Dillender, the father-in-law of Elizabeth Dillender. This witness said that after his son had married Elizabeth Gipson, he paid him a visit. The son and his wife were living at the time in the same house

with Lum Owens. The occasion was Christmas eve, the 24th of December, 1911. While Dillender's son and his wife were getting breakfast in the kitchen that morning, Dillender and Owens were in another room of the house talking, and in the course of the conversation Owens told Dillender what was going to come to the children of Jasper Gipson bye and bye; said their father was the adopted heir to his mother; that his mother went and had him adopted; had two or three lawsuits about him. Later Lum Owens told the witness he was building a home for the children of Jasper and that the land where the house was being built belonged to them. This was before Owens married. On cross-examination the witness gave direct testimony about a deed of adoption:

"Q. You never saw any deed of adoption, did you, Mr. Dillender? A. No sir, never saw any deed of adoption; he said that it was adopted, but it got burnt up there at the court house.

"Q. What got burned up at the court house? A. He said the adoption, record of the adoption.

"Q. Didn't he have the record at home? A. He didn't say whether he had or not. I didn't ask him about that.

"Q. He never said there ever was any deed of adoption either in existence, did he? A. He said the deed of adoption was on record until it got burned up.

"Q. He told you there was a deed of adoption on record until it got burned up? A. Yes sir, that is just what he said.

"Q. When did he tell you that? A. He told me on Christmas Eve, 1911."

One witness, Mrs. Tennie Summers, said that on one occasion when Mrs. Newsom was sick and thought she would die, she said to the witness she had two boys, Lum and Jasper, one was as near to her as the other—there was not a straw's difference between them—and they would get what was left when she died.

The testimony of the witnesses for the defendant was mostly of a negative character; in effect that though

they were acquainted with and neighbors of the New-soms, they had never heard them mention the adoption of Jasper Gipson. But one witness, Mrs. Amanda Kitchell, testified that on an occasion when Jasper Gipson was very ill and in bed—an illness from which he never recovered—Mrs. Newsom said in his presence that people had told it around she had adopted Jasper and it looked like she was having as much trouble as if she had, that she had taken "Jap" and the children back three times; that Jap had asked her to take these children if he died and left them, and to take care of them, and she said, "I am doing the best I can, and if they mind me and stay at home, I am going to see that they have something or other when I leave them." Jasper Gipson heard this conversation and said nothing, so the witness stated.

The decree of the court was that the Missouri State Life Insurance Company held a lien on all the land prior to the interests of either of the parties to the litigation, but that as between the parties the liability therefor should be charged against the interest of the defendants, Nellie and Robert Johnson Owens, and this the decree did.

The court adjudged further that the two plaintiffs as children of Jasper Gipson were entitled to a one-fourth interest each in the fee of the lands in contro-versy, and that Robert Johnson Owens was entitled to an undivided half interest in the fee, subject to the dower interest of his mother. This appeal was taken by the defendants, Nellie Owens and Robert Johnson Owens.

I. From the petition to the decree an ambiguity runs regarding the theory upon which relief was sought and granted—whether for the reason that the father of the plaintiffs had been adopted by the mode provided in the statutes, or because Mrs. Newsom had contracted with some one to adopt him, and pursuant to the contract, Jasper Gipson had lived in her family, been dutiful and had rendered services until he was of age. The petition says, "Arabelle Newsom took Jasper Gipson into her home and adopted him as her legally adopted child."

Gipson v. Owens.

The allegation would be good against a demurrer *ore*

**Pleading.** *tenus* as a statement of a statutory adoption, but subject, perhaps, to a motion for more definiteness of detail; but immediately following the said averment facts are alleged which look like the pleader had in mind a contract to adopt followed by performance on one side. The witnesses in testifying rambled along both ways, and the decree first found Jasper had been adopted in 1871, when twelve years of age, and then found other facts suggesting that the court believed a contract to adopt him had been entered into by Mrs. Newsom and performed by Jasper.

The only mode of adopting a child known to the law at the time of the supposed adoption of Jasper Gipson was by a deed "executed, acknowledged and recorded

**By Deed.** in the county of the residence of the person executing same, as in the case of a conveyance of real estate." A married woman was capable of adopting by joining her husband in such a deed. [1 Wagner's Statutes, Chap. 28.]

Prior to that time, and since, courts of equity have specifically enforced contracts to adopt a child made upon sufficient consideration, like the relinquishment of his

**By Contract.** custody and services by his parents and services thereafter rendered by him to the adoptive parent. But the courts have been exacting about the cogency of the evidence necessary to prove such a contract was made. [See Kinney v. Murray, 170 Mo. 674, and cases cited therein and below in this opinion.] Suffice it to say, as to that doctrine in connection with the present case, that here there was no contract to adopt made with any one, and hence there is no contract of the kind to be enforced. The Newsoms did not obtain the custody of Jasper Gipson upon any agreement with his step-father or other person. On the contrary the boy had been left with them for a short while by his step-father, and afterward was kept by them against the step-father's will and the will of his uncles. No contract to adopt him was made either with Prewitt or with the

boy or any one in his behalf, and we will deal with the appeal on the theory that the court found there had been a legal or statutory adoption. On that theory whatever interest, if any, the plaintiffs, as his children and as heirs of Mrs. Newsom, have in the land in controversy is derived from the execution and recording of a deed, in the manner provided by the statutes. This being true, an action for partition does not lie, for the interests of all the parties are legal and not equitable, and the defendants are in the adverse possession of the property to be divided. [Chamberlain v. Waples, 193 Mo. 96.] Nevertheless, the defendants not having insisted upon this defense, we will consider the case further.

<span style="margin-left:2em">Partition.</span>

II. The vital question is whether a statutory adoption, that is to say, a complete execution of the right kind of a deed, was established firmly enough to support the finding of the court that Jasper Gipson actually had been adopted by Arabelle Newsom. The answer to this question involves, first: An inquiry regarding whether, if such a deed had been made and was lost, its contents could be established by secondary evidence; and second: If they can be, whether this was done in the present case with a degree of completeness which satisfies the requirements of the law.

(a) A deed of adoption or contract to adopt when proved to have been made and afterwards lost or destroyed, may be established by other evidence of the best character available, and even by oral testimony. In a case decided by this court where an alleged contract to adopt a child was based on a correspondence between the child's father and the person said to have agreed to adopt the child, a letter of the correspondence in which the proposition to adopt was said to have been contained had been lost, and oral testimony as to its contents had been received in the lower court, and its ruling was not censured. [McKee v. Higbee, 180 Mo. 263.]

<span style="margin-left:2em">Lost Deed.</span>

The same course was taken by the trial court and accepted as correct in Haworth v. Haworth, 123 Mo. App. 303.  [See, also, Huyck's Estate, 49 Misc. 391, 99 N. Y. Supp. 502; Moore v. Bryant, 10 Tex. Civ. App. 131; Coombs v. Cook, 35 Okla. 326; Kennedy v. Borah, 226 Ill. 243.]

The terms of a lost deed or contract to adopt may be proved, like any other lost document, by secondary evidence.

(b)  When it is sought to establish an oral contract to adopt, the courts, as said above, require a high degree of certainty in the proof, and the evidence as to the terms and character of the contract, must be cogent, clear and convincing.  This rule has been declared in many cases, most of which are cited in Kinney v. Murray, 170 Mo. 674, 700, et seq.

*Character of Proof.*

In a later case, wherein the rule was thus declared and supported by quotations from several opinions of the court, including that in Kinney v. Murray, the question arose of whether the same rule obtained when the supposed contract had been put into writing and the writing had been lost.  It was alleged that a Mrs. Sisson had written a letter to T. W. Anderson, the father of a girl whom Mrs. Sisson proposed in the letter to adopt. The letter had been lost, but there was strong evidence that it had been written by Mrs. Sisson and received by Anderson, part of the evidence being the reply of Anderson to the letter, wherein he accepted the proposition of Mrs. Sisson.  That the contract had been made was also supported by the testimony of witnesses that Mrs. Sisson had frequently stated her intention to give her property to the girl after the girl had gone to live with her.  The court said:  "The letter by Mrs. Sisson making the proposition, so it is contended, was destroyed; hence, so far as the proposition by Mrs. Sisson is concerned, which is a vital part of the contract, the proof of it must rest upon parol testimony.  The proposition, as made by this letter, the letter not being in existence, stands upon the same basis as though the proposition had never been

286 Mo.—4

reduced to writing, and as to the terms of the proposition requires the same clear and convincing proof as is necessary to the establishment of a parol contract." [McKee v. Higbee, 180 Mo. 1. c. 296.]

Concerning the question of how fully the contents of a lost document must be proved, in order to give effect to it, a treatise of merit says: "That for documents having in themselves a legal effect—such as deeds and contracts—all the material parts must be established by the testimony to contents. It would be improdent to act judicially upon a part of a document whose material effect must depend equally upon other and missing parts. This practice, doubtless, would sometimes leave honest rights unenforceable because their tenor is unknown; but this contingency is preferable to the constant and greater risk in the other direction." The learned author then says verbal precision in proving the contents is not required; "the substance of the material parts, but by no means the words themselves (except, of course, so far as the witness is able), is the rational limit of the law's requirement." [3 Wigmore, Evidence, sec. 2105, pp. 2845, 2846.] In another passage the same writer says: "By the principle of completeness (post Section 2105) it is regarded as unsafe to listen to any testimony of the contents of a lost writing unless that testimony purports to reproduce at least *the substance of the contents;* and some courts even require the fairly complete details of its contents." [Ibid., sec. 1957, p. 2602.] Said MARSHALL, C. J., "The substance of the agreement ought to be proven satisfactorily" (Tayloe v. Riggs, 1 Pet. 591, 600). Another court, in stating what must be shown of a lost deed, said: "The property conveyed, the estate created, the conditions annexed, the signing, sealing and delivery, are required to be proved with reasonable certainty, by witnesses who can testify clearly to its tenor and contents." [Thompson v. Thompson, 9 Ind. 323, 334.]

In a case where the execution of a lost promissory note was to be established by secondary evidence, the court said that proof of the contents of a lost paper ought to be the best the party can procure, "and, at all events, such as to leave no reasonable doubt as to the substantial parts of the paper." [Renner v. Bank of Columbia, 9 Wheat. (U. S.) 581, 597.]

Where an attorney had mislaid a letter his clients had turned over to him, he produced at the trial a copy he had made and offered to testify the copy was true and correct and that there was nothing in the original relative to the business in controversy which was not contained in the copy. This testimony and the copy were rejected, and the Supreme Court sustained the ruling, professing at the same time implicit confidence in the judgment and character of the witness. The evidence was incompetent because the witness did not pretend "the extract offered, or his own recollection, embraced even the substance of *the whole* letter;" and though he was willing to testify the rest of the letter related in no way to any matter in the case (wherefore it was insisted the material contents of the original were shown in the copy) the Supreme Court said the decisive answer was this: the court had only the opinion of the witness that all relevant parts of the original were in the copy; adding this remark: "There can seldom be a sound construction of written evidence without adverting to all the parts and considering the operation of the whole." [Dennis v. Barber, 6 S. & R. 420, 425.]

A later Pennsylvania case called for a ruling upon the sufficiency of evidence introduced to prove the contents of a lost letter and a lost power of attorney. A witness had testified he knew the party claiming to be attorney in fact had a power of attorney, but the witness could not state its contents; and the court said, "It is very evident therefore that there was no proof of any authority to execute the agreement," etc. Regarding the proof of what was in the lost letter, the

proof consisting of the testimony of the wife of the man
to whom it was written, the opinion, after pointing out
other deficiencies in her testimony, said: "In addition
to this she does not profess to give the whole contents,
and does not even state that this portion of the letter
was all that related to the subject of the timber. On
this point her testimony falls far short of the evidence
of the contents offered in Dennis v. Barber, 6 S. & R.
420; a case which rules this in respect to the proof of
contents." [Coxe v. England, 65 Pa. 212, 222.]

There have been decisions, which, like the one in
McKee v. Higbee, supra, were rendered in cases where
lost instruments or proceedings to adopt were to be
proved by secondary evidence, and which shed light on
what degree of cogency of proof is exacted. In a Mis-
souri case the execution of the deed of adoption was
held to have been established orally, the recorder of
deeds and his deputy having both testified they had seen
and examined the record of it and given the contents.
This evidence, along with testimony of statements made
by the adopting-father that he had adopted the child
and he was his son, were held to satisfy the rule that
convincing evidence must be produced, and to support
the finding of the trial court that a deed of adoption
had been executed and recorded. [Haworth v. Haworth,
123 Mo. App. 303.]

In an Illinois case the adopting had been by a pro-
ceeding in court, in accordance with the laws of that
State; and the records having been burned, the points
to be decided were whether their contents could be
proved orally and whether the evidence put in for that
purpose sufficed to show jurisdiction of the proceeding
to adopt was obtained by the county court. The com-
petency of the oral testimony was ruled, and then the
court considered the adequacy of it to show the peti-
tion for the adoption gave the court jurisdiction. The
attorney, who prepared the petition, testified fully and
in detail regarding its contents, as will be seen by read-

ing the opinion, and the court said, "The testimony in this case was clear that the petition contained all that was required by the statutes, unless it be the age of the appellee." Inasmuch as the evidence showed the child was a minor when adopted, and as thirty-eight years had elapsed since, the court said it would be too technical to hold the statute required the exact age to be given under such circumstances. [Kennedy v. Borah, 226 Ill. 243, l. c. 250 to 253.]

The matter came up for a ruling in Oklahoma, where, too, adoptions are judicial. The court records had been burned, and the proof was oral. The sheriff of the county testified he was in court one day, when Isabel O'Bannon, the alleged adopting parent, handed to him a petition for the adoption of the claimant to the lands in litigation, as the petitioner's child; that he read the petition after it had been spread on the records of the court, and later read the order of adoption upon the record. He could not remember all the contents of the order, but remembered that it said "the adoption of such child to be accepted as the adopted child of Mrs. O'Bannon. The proceeding was complete of the adoption of this child, Betsy Durant, to Mrs. O'Bannon." This was held sufficient to establish the existence and contents of the record of adoption. [Coombs v. Cook, 35 Okla. 326, 330 to 332.]

At this point it is well to recall that a deed of adoption is not a document or record of uniform contents, either prescribed by a statute or by immemorial practice, but may contain whatever conditions and consideration the parties choose to insert. As to this distinction some observations of FOLGER, J., in a case where the contents of a lost judgment roll on which a judgment by confession had been rendered, were to be proved, are pertinent: "I am aware that, in cases where the lost paper is not to be put in a class, for which the requirements of some statute has prescribed the substantial form and contents, there may be no satisfactory proof of contents, save by one who has possessed himself of the whole of

the contents and is able to give them forth generally and substantially (Sizer v. Burt, 4 Denio, 428). But in a case where the lost paper is of a kind which is usually drawn up in accordance with a statute, and usually follows a form devised for that kind of instrument—so much so that the form is put into type, and printed copies are furnished to attorneys—we may from the circumstances infer that the attorneys who had the drafting of it would not have made any but a paper in legal form and substance, and that those who had to base their official action upon it would not have proceeded by virtue of it had it not, to their judgment and scrutiny, been agreeable in its contents to the requirements of the statutes." [Mandeville v. Reynolds, 68 N. Y. 528, 536.]

That an adoption document is not an instrument of such well known nature and common use as to authorize the inference of its contents from evidence to show it was executed, was ruled in McCann's Estate, 9 Pa. Dist. 184. In that case the document had been burned; but a witness testified she had seen the lost adoption paper prepared by an official and signed by the adopting parent, and that she, as she mother of the child to be adopted, had signed it; that the officer had asked her if she would give up the child and she answered in the affirmative; that the other party agreed to raise her, and treat her as their own child, give her schooling and education, and she should be called Minnie McCann; that the paper contained the day and date of its execution and a red seal was put on it. Said evidence, fortified by proof of declarations by the decedent and his wife regarding the adoption, was held insufficient to establish that a deed of adoption had been made.

We are treating this appeal as one taken from a finding that a statutory adoption actually occurred; hence, the question is not whether the evidence convinces us of that fact, as it is in equity cases for the specific performance of a contract to adopt. It is rather whether there is evidence sufficient to uphold a finding of the fact by the circuit court. We point out that no witness

testified to having seen either a deed of adoption signed and acknowledged by Mr. and Mrs. Newsom, or the record of one. No one testified that either of those persons ever stated they had executed such a deed, though several witnesses testified to statements by them that they, had adopted Jasper Gipson, but never saying how this had been done. If a deed was in fact made, not a trace of evidence regarding its contents is in the record before us. It is noteworthy that Rev. Cagle in telling of the departure of Mrs. Newsom and others for Kennett one morning for the announced purpose of adopting Jasper, which Mrs. Newsom declared on her return, had been done, omits Mr. Newsom's name in giving the names of all the members of the party. But Mrs. Newsom could execute a deed of adoption only by joining with her husband in the execution. [1 Wagner's Statutes, chap. 28, sec. 2.]

The only positive evidence going to show a deed had been made and recorded was the statement of the witness Dillender that Lum Owens told him a deed was made, but the record of it had been destroyed when the court house burned. This testimony went in without objection and is to be considered, weak as it is, with reference to its completeness and adequacy upon the question of the contents of the deed. Lum Owens did not tell Dillender that he (Lum) had ever seen the deed or the record of it; did not say whether or not it was signed and acknowledged by both Mr. and Mrs. Newsom, and said nothing of its contents. The substance of the statement, so far as it relates to a deed, was this: "He said the deed of adoption was on record until it got burned up." Arabelle Newsom died in 1909, and if these plaintiffs were her heirs in consequence of the adoption of their father, they inherited their interest in the premises in controversy when she died. Yet, until January 17, 1917, this supposed interest was not asserted and for several years rent was paid by one or both plaintiffs to Mrs. Newsom's son, C. J. Owens, for the portion of the land used by them. Mrs. Newsom was heard to declare

in Jasper's hearing and without contradiction that she had not adopted him, but was having as much trouble as if she had. However, these facts are somewhat beside the mark, the inquiry being whether the evidence about the supposed lost deed sufficed to prove one was made and to show its contents completely enough to justify a finding that Jasper had been adopted by such an instrument as the statute required. The statute must be shown to have been strictly complied with, it being in derogation of the common law. [Sarazin v. Union Ry. Co., 153 Mo. 479, 485.]

Tested by the principles and rules announced in the authorities we have cited, and particularly in the case of McKee v. Higbee determined by this court, on evidence much more complete regarding the contents of the lost contract than we have in the present record, we must hold the evidence to prove the execution by Paddy and Arabelle Newsom of a deed adopting Jasper Gipson and the recording of it, was insufficient; further, that were the ruling upon that question the other way, manifestly the substantial contents of the deed were not proved with the completeness required by the law; were not proved at all, we may say.

Therefore the judgment will be reversed and the cause remanded.

It is so ordered and considered. All concur.