**BLUNDELL, Ex'r, et al. v. WALLACE.**

No. 12123—Opinion Filed Oct. 9, 1923.

Rehearing Denied Nov. 6, 1923.

(Syllabus.)

1. **Indians — Wills—Purpose of Statutes.**
The act of Congress of April 26, 1906, entitled, "An act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory and for other purposes," provides in section 23: "Every person of lawful age and sound mind may by last will and testament devise and bequeath all of his estate, real and personal, and all interest therein, provided that no will of a full-blood Indian shall be valid if such last will and testament disinherits the parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States Court for the Indian Territory, or a United States Commissioner." This provision of the act of Congress had for its purpose the further removal of restrictions from citizens of the Five Civilized Tribes of Indians, and was not intended by Congress as conferring an absolute right of disposition of his property without regard to the law of the state where the property is located.

2. **Same—Applicability of State Statute.**
Section 8341, Rev. Laws 1910, provides: "Every estate and interest in real or personal property to which heirs, husband, widow, or next of kin might succeed, may be disposed of by will; provided, that no marriage contract in writing has been entered into between the parties; no man while married shall bequeath more than two-thirds of his property away from his wife, nor shall any woman while married bequeath more than two-thirds of her property away from her husband; provided, further, that no person who is prevented by law from alienating, conveying or incumbering real property while living shall be allowed to bequeath same by will." Held, this provision is applicable to Indian citizens, as well as other citizens of the state.

3. **Same—Disposition of Allotment — Validity.**
Record examined, and held, that the testatrix, Patsy Poff, could not convey her real estate allotted to her as a citizen of the Choctaw Nation by will executed in 1916, free of the provisions of section 8341, Rev. Laws 1910.

Error from District Court, Garvin County; W. L. Eagleton, Judge.

Action by W. R. Wallace against James H. Blundell, executor of last will and testament of Patsy Poff, deceased, and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Bond, Melton & Melton, for plaintiffs in error.

Blanton, Osborn & Curtis and W. L. Farmer, for defendant in error.

BRANSON, J. This appeal is prosecuted to reverse a judgment obtained by the defendant in error against the plaintiffs in error in the district court of Garvin county,

Okla. The parties are referred to herein as they appeared in the lower court. The facts controlling the determination of the issues raised by the pleadings were stipulated, and were, in substance, that Patsy Poff was a member of the Choctaw Tribe of Indians of one-ahlf degree of blood, and that she was allotted the land in question, to wit, the homestead, and 10 acres of the surplus allotment as a citizen of the Choctaw Nation, and died seized thereof, on the 7th day of August, 1916, a resident of Garvin county. That the said Patsy Poff left surviving her husband, David H. Poff, and that prior to her death she had executed a will devising her said homestead and 10 acres of surplus to the defendants. That said will bequeathed to David H. Poff the sum of $5, which did not amount to one-third of the property of which the said Patsy Poff died seized, the said estate of the said Patsy Poff being worth several thousand dollars.

Judgment for one-third of the land was entered in favor of plaintiff, following the state statute.

From the judgment of the district court the plaintiffs in error appeal, and make various assignments. The only assignments necessary to be discussed, however, as we view the case, are assignments 2, 3, and 4, which are:

"(2) The said district court of Garvin county erred in holding as a matter of law that the right of the plaintiff in error's decedent, Patsy Poff, to make a will was controlled by section 8341, Rev. Laws 1910.

"(3) The said district court of Garvin county erred in holding that the will executed by the said Patsy Poff, deceased, was not sufficient to convey and vest the fee title in the lands therein described to the said beneficiaries under said will.

"(4) The said district court of Garvin county erred in holding that the defendant in error's decedent, David H. Poff, husband of Patsy Poff, deceased, was entitled to recover any interest in said land divested under the terms of said will."

The question of law involved in this appeal is whether or not the limitations contained in section 8341, Rev. Laws 1910, controlled. It must be borne in mind that the testator in this case was a half-blood citizen of the Choctaw Nation; that the lands sought to be devised consisted of her homestead and 10 acres of her surplus, allotted to her by reason of her citizenship in the Choctaw Nation; that this property was worth several thousand dollars; and that all of her property except the sum of $5 was bequeathed to persons other than her husband.

The plaintiff, W. W. Wallace, claimed a one-third interest in the lands, so devised, through mesne conveyances passing the interest of David H. Poff, husband of the said testatrix, Patsy Poff. The defendants contend that section 23 of the act of Congress of April 26, 1906, gave the allottee power to dispose of her property by will free from any limitation imposed by the statutes of the state of Oklahoma. Said section 23 is:

"Every person of lawful age and sound mind may by last will and testament devise and bequeath all of his estate, real and personal, and all interest therein, provided that no will of a full-blood Indian devising real estate shall be valid, if such last will and testament disinherits the parent, wife, spouse or children of such full-blood Indian unless acknowledged before and approved by a judge of the United States Court for the Indian Territory, or a United States Commissioner."

Said section was modified by the act of May 27, 1908, by adding at the conclusion thereof, "or a judge of a county court of the state of Oklahoma." The said statute which the trial court held was controlling is section 11224, Comp. Stat. 1921 (sec. 8341, Rev. Laws Okla. 1910), which section provides:

"Every estate and interest in real or personal property to which heirs, husband, widow or next of kin might succeed, may be disposed of by will: provided, that no marriage contract in writing has been entered into between the parties; no man while married shall bequeath more than two-thirds of his property away from his wife, nor shall any woman while married bequeath more than two-thirds of her property away from her husband; provided, further, that no person who is prevented by law from alienating, conveying or incumbering real property while living shall be allowed to bequeath same by will."

The defendants rely for reversal of this cause on their contention that the said section 23 of the act of Congress gives the allottee to whom said act referred the right and power to devise and bequeath all of his property, and that a limitation cannot be placed upon said right by the said section of the state statute; that said sections cannot be construed together; that they are in conflict, and that Congress had the power to regulate the disposition of allotments of citizens of the Five Civilized Tribes. If these statutes are in conflict, then, of course, the act of Congress must prevail, and the judgment of the trial court be reversed.

In determining whether or not they are in conflict, the question is, What was the intent and purpose of Congress in passing said

section 23? Did it give a right to the Indian, or merely remove a restriction existing? To determine this intent, we must necessarily look to the conditions as to which Congress was legislating, and take into consideration its various acts in pari materia. In looking to the different acts of Congress, we do not feel that it is necessary to quote at length therefrom, or to refer in detail to the different provisions of the numerous acts from 1893 down to 1908, touching the allotments of the lands theretofore held in common by the citizenship of the several tribes known as the Five Civilized Tribes, and constituting the bulk of that part of Oklahoma which prior to its admission as a state, on November 16, 1907, was the Indian Territory. The various acts and treaties set forth in detail that the purpose and object of Congress was to divest the tribes, as such, of their interest in the lands owned by them, and to vest the same in the citizens legally entitled to enrollment, each of the acts carrying with it an inhibition against alienation by the Indian citizens of the lands so received, in the exercise of the plenary power of the Congress of the United States, as guardian of the Indians and the properties owned by them. The act of Congress of July 1, 1902, known as the Supplemental Agreement with the Choctaws and Chickasaws, out of which the title to the land involved in this controversy arose, provided for the allotment to each citizen of the tribe a certain amount of land, the acreage thereof to be determined by the character of the land, as disclosed by an appraisement thereof long theretofore made under the supervision of the government of the United States. The said allotment act specifically provided that a certain portion of the lands to which each citizen was entitled should be known as surplus, and a certain portion homestead. These different designations were useful in the scheme of allotment only in so far as Congress put different restrictions and limitations upon the one to the other. These lands allotted as surplus were made alienable within a certain period of time, while the lands allotted as homestead were not alienable except under certain other conditions expressed in the acts. None of the lands could be disposed of by will until Congress authorized the same. This authority to dispose of land by will was in the nature of a removal of restrictions theretofore existing against alienation, and not in its nature conferring a right. The said section 23 was the first removal of Congress of the restriction theretofore existing against alienation by will in the Choctaw and Chickasaw Nations.

The act of Congress of May 2, 1890, extended in force in Indian Territory, of which the Choctaw Nation was a part, chapter 155 of Mansfield's Digest on "Wills and Testaments." Section 2 of the act of April 28, 1904 (33 Stat. 573), made all the laws of Arkansas theretofore put in force in the Indian Territory, applicable to Indians and their property, where not inconsistent with acts of Congress governing the same. One section of said chapter 155 of said Mansfield's Digest on Wills and Testaments, being section 6500, provided:

"When any person shall make his last will and testament and omit to mention the name of a child, if living, or the legal representatives of such children born and living at the time of the execution of such will, every such person so far as regards such children, shall be deemed to have died intestate, and such children shall be entitled to such proportion, share and dividend of the estate, real and personal, of the testator, as if he had died intestate, and such children shall be entitled to recover from the devisees and legatees in proportion to the amount of their respective shares, and the court exercising probate jurisdiction shall have power to decree a distribution of such estate according to the provisions of this and the preceding sections."

In the Creek Nation the act of Congress of June 30, 1902 (32 Stat. 503), the same being a part of the Supplemental Creek Agreement, provided:

"The homestead of each citizen shall remain after the death of the allottee for the use of children born to him after May 25, 1901, but if he have no such issue, then he may dispose of his homestead by will, free from the limitation herein imposed. * * *"

In the case of In re Brown's Estate, or Lynde-Bowman-Darby Co. v. Brown, 22 Okla. 216, 97 Pac. 613, this court had under consideration the question as to whether the said limitation of the said chapter 155, Mansfield's Digest, on Wills and Testaments, hereinabove quoted, worked a limitation upon the right of a person who fell within the conditions of the said act of Congress, giving the right to dispose of the homestead part of the allotment by will. After quoting said provision of Mansfield's Digest and the said provision of the Creek Treaty of 1902, this court said:

"If the laws of Arkansas governing 'Wills and Testaments' * * * were not in force in the Creek Nation at the time of descent cast in this case, then there were no written laws governing these subjects, and the act of Congress of May 2, 1890, supra, putting in force chapter 155, supra, * * * would be abortive. Such was not the inten-

tion of Congress, and the courts heretofore construing these laws have not so construed them. * * * As in this case there were no children born to the devisor after May 25, 1901, there was no reason why she would not dispose of the land embraced in her homestead by will, but in doing so, it was incumbent upon her to make provision therein for any surviving children born prior to the 25th of May, 1901. Failing to do so, she must be deemed to have died intestate, and such surviving child is entitled to such a proportion, share and dividend, real and personal, of the estate, as if no will had been made. To determine such share, resort must again be had to the laws of Arkansas."

In the syllabus in said case the court said:

"There being no children born to a noncitizen Creek allottee after the 25th day of May, 1901, she was entitled to dispose of her homestead by will, and such devise was subject to the limitations contained in section 6500 of Mansfield's Digest, which reads: 'When any person shall make his last will and testament, and omit to mention the name of a child, if living, or the legal representatives of such child born and living at the time of the execution of such will, every such person so far as regards such child, shall be deemed to have died intestate, and such child shall be entitled to such proportion, share, and dividend of the estate, real and personal, of the testator as if he had died intestate; and such child shall be entitled to recover from the devisees and legatees in proportion to the amount of their respective shares, and the court exercising probate jurisdiction shall have power to decree a distribution of such estate according to the provisions of this and the preceding sections.' "

Thus the court held that, although the act of Congress known as the Supplemental Creek Treaty expressly authorized citizens under the condition that no child was born after May 25, 1901, and living, to dispose of the homestead by will, the Arkansas statute placing a limitation thereon was applicable to the Indian citizen. See, also, Taylor v. Parker, 235 U. S. 42, 59 L. Ed. 121.

The said authorities drive us to the conclusion that as long as the statutes of Arkansas placed in force in the Indian Territory on wills and testaments remain the law of that jurisdiction, wherever property belonging to an Indian citizen by reason of his allotment was alienable by will, the disposition thereof by the Indian citizen by his last will and testament was in accordance with the provisions of Mansfield's Digest, and the limitations contained therein.

In the case of Jefferson v. Fink, 247 U. S. 288, in referring to the various acts of Congress touching the allotment of lands in the Five Civilized Tribes, the Supreme Court, among other things, said:

"Congress was then contemplating the early inclusion of that territory in the new state, and the purpose of those acts was to provide for the time being a body of laws adapted to the needs of the locality and its people, in respect to matters of local or domestic concern. There being no local Legislature, Congress alone could act. Plainly its action was intended to be merely provisional. By the Enabling Act of June 16, 1906 (34 Stat. 267), provision was made for admitting into the Union both the territory of Oklahoma and the Indian Territory as the state of Oklahoma. Each territory had a distinct body of local laws. Those in the Indian Territory, as we have seen, had been put in force there by Congress. Those in the Territory of Oklahoma had been enacted by the territorial Legislature. Deeming it better that the new state should come into the Union with a body of laws applying with practical uniformity throughout the state, Congress provided in the Enabling Act (sec. 13) that 'the laws in force in the Territory of Oklahoma, as far as applicable, shall extend over and apply to said state until changed by the Legislature thereof,' and also (sec. 21) that 'all laws in force in the Territory of Oklahoma at the time of the admission of said state into the Union shall be in force throughout said state, except as modified or changed by this act or by the Constitution of the state.' The people of the state, taking the same view, provided in their Constitution (art. 25, sec. 2) that 'all laws in force in the Territory of Oklahoma at the time of the admission of the state into the union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law.'

"The state was admitted into the Union November 16, 1907; and thereupon the laws of the Territory of Oklahoma relating to descent and distribution (Rev. Stat. Okla. 1903, c. 86, art. 4) became laws of the state. Thereafter Congress, by the act of May 27, 1908, c. 199, 35 Stat. 312, sec. 9, recognized and treated 'the laws of descent and distribution of the state of Oklahoma' as applicable to the lands allotted to members of the Five Civilized Tribes."

The effect of the Enabling Act and the schedule to the Oklahoma Constitution, as touching wills and testaments, was merely to substitute the Oklahoma territorial statutes for the laws then in force in the Indian Territory. The policy of Congress at all times touching Indian affairs was to place the Indian, as far as practicable and beneficial to the Indian, on the same footing as other citizens of the community or

state in which the Indian resides, and this construction will be given to the acts of Congress unless the contrary intention appears. In making the allotments to the citizens of the Five Civilized Tribes, different restrictions and provisions governed the surplus, homestead, and inherited lands. In enacting section 23, which had for its purpose a further removal of restrictions, Congress was not unmindful of the fact of those varying legal provisions as affecting the real estate held by the Indians, and by the use of the language of section 23, undertook to make it clear that the Indian citizen could dispose by will of all his property, and not that arising from some particular source. In other words, Congress merely authorized the Indian to dispose of his estate on the same footing as any other citizen, with the limitation contained in the proviso thereto. There is nothing in the language of section 23 which, if the will had been made, and testator died after said act and before statehood, would not have made the same subject to the provision of the Arkansas statute in force in the Indian Territory, as held to be applicable in the cases above set out. The Oklahoma statute being merely a substitution for the Arkansas law, there is no potent reason advanced, and we think none exists, why the limitations imposed by the Oklahoma statute above quoted should not prevent an Indian from disposing of his property by will, to the exclusion of the husband or the wife.

The case cited by plaintiff in error, Blanset v. Cardin et al., 261 Fed. 309, construed an act of Congress touching the alienation by will of allotments held under trust or patent, by the government for the benefit of certain Quapaw Indians, which act of Congress gave the Secretary of the Interior complete power to approve or disapprove such wills. We do not think, under the facts recited in that case, that the reasoning has any application to the question now before this court for determination.

For the reasons given, the judgment of the district court of Garvin county should be affirmed.

JOHNSON, C. J., and McNEILL, KANE, KENNAMER, NICHOLSON, and HARRISON, JJ., concur. COCHRAN, J., dissents.