**TIGER et al. v. TIMMONS et al.**

No. 18372. Opinion Filed Jan. 6, 1931.

Rehearing Denied Feb. 3, 1931.

Wallace & Wallace, for plaintiffs in error.

Redmond S. Cole and Hughes, Foster & Ellinghausen, for defendants in error.

LESTER, V. C. J. The parties appear in this court in the same position they occupied in the court below, and will be referred to as plaintiffs and defendants.

The plaintiffs brought an action against the defendants wherein they claimed an interest in certain lands originally allotted to Jennie George, nee Pickett, who was enrolled as a bull-blood member of the Creek Tribe of Indians.

The plaintiffs alleged that they are heirs at law of Willie George, who was the husband of Jennie George, and that Willie George died intestate August 20, 1918; that Jennie George died prior to the death of her husband; that she made and executed a will in which she bequeathed to her husband the sum of $5; and that in the same will she bequeathed to her sisters all of her interest in and to her allotted lands; that the value of said lands amounted to several thousand dollars and largely in excess of two-thirds of her estate, thereby disinheriting her husband to the extent of the differ-ence between the amount that she bequeathed him and the actual value of one-third of the estate, to which the husband would have been entitled under the Oklahoma Code.

The plaintiffs in their petition set forth a copy of the will made and executed by Jennie George, wife of the said Willie George, and said will as exhibited is shown to have been duly acknowledged and approved by Warren H. Brown, judge of the county court of Creek county, on the 8th day of March, 1913.

Defendants filed a demurrer to the plaintiffs' petition, which demurrer was sustained by the court, and judgment was rendered by the court dismissing the plaintiffs' petition.

The plaintiffs elected to stand upon their petition as filed, and from the judgment rendered therein the plaintiffs appeal.

There is but one vital question herein presented, that is, does section 23, Act of Congress, April 26, 1906 (34 Stat. 145), as amended by section 8, Act of Congress, May 27, 1908 (35 Stat. 315), constitute a federal exception to the Oklahoma law relating to wills?

Section 23 of the Act of Congress of April 26, 1906, provides:

"Every person of lawful age and sound mind may by last will and testament devise and bequeath all of his estate, real and personal, and all interest therein: Provided, that no will of a full-blood Indian devising real estate shall be valid, if such last will and testament disinherits the parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States court for the Indian Territory, or a United States commissioner."

The Act of May 27, 1908, sec. 8, amended said act by adding at the conclusion thereof, "or a judge of a county court of the state of Oklahoma."

The defendants below claimed and asserted that said acts of Congress permitted the wife under a will to disinherit the husband provided the will was acknowledged before and approved by one of the federal agencies named in the act of Congress.

The plaintiffs contend that section 11224, C. O. S. 1921, is controlling. Said section reads as follows:

"Every estate and interest in real or personal property to which heirs, husband, widow, or next of kin might succeed, may be disposed of by will; provided, that no marriage contract in writing has been entered into between the parties; no man while married shall bequeath more than two-thirds of his property away from his wife, nor shall any

woman while married bequeath more than two-thirds of her property away from her husband; provided, further, that no person who is prevented by law from alienating, conveying, or incumbering real property while living, shall be allowed to bequeath same by will."

This court in the case of Blundell v. Wallace, 96 Okla. 29, 220 Pac. 40, had under consideration the will of one Patsy Poff, who was an enrolled half-blood member of the Choctaw Tribe of Indians. By the terms of said will, Patsy Poff bequeathed to her husband the sum of $5, and it was shown that her estate was worth several thousand dollars, and that by bequeathing to her husband the sum of $5 the said will was in contravention of the Oklahoma Code in that it bequeathed more than two-thirds of the property away from the husband. This court held that the provision of the will was ineffectual. There was an appeal from this decision to the United States Supreme Court, and that court affirmed the holding of this court. See Blundell v. Wallace, 69 L. Ed. 664.

It must be remembered, however, that the court there was considering the will of an Indian of the half-blood. In the instant case we are considering the will of a full-blood member of one of the Five Civilized Tribes.

The case of Blanset v. Cardin, 256 U. S. 319, 65 L. Ed. 950, 41 Sup. Ct. Rep. 519, involved a will of an Indian woman of the Quapaw Tribe whose lands were restricted. Said will bequeathed her restricted lands in question to the children and grandchildren of the testatrix. She bequeathed to her husband the sum of $5. It appears the estate was worth approximately $40,000. The court in that case in passing on the question said:

"But against the contention and conclusion, the Act of Congress approved February 14, 1913 (37 St. at L. 678, chap. 55, Comp. Stat. section 4228, 3 Fed. Stat. Anno. 2nd Ed. p. 855) is opposed. Section 2 of that act is as follows:

"'Section 2. That any persons of the age of 21 years, having any right, title, or interest in any allotment held under trust or other patent containing restrictions on alienation, or individual Indian moneys, or other property held in trust by the United States, shall have the right prior to the expiration of the trust or restrictive period, and before the issuance of a fee-simple patent or the removal of restrictions, to dispose of such property by will, in accordance with regulations to be prescribed by the Secretary of the Interior: Provided, however, that no will so executed shall be valid or have any force or effect unless and until it shall have been approved by the Secretary of the Interior:

Provided, further, that the Secretary of the Interior may approve or disapprove the will either before or after the death of the testator, and in case where a will has been approved and it is subsequently discovered that there has been fraud in connection with the execution or procurement of the will, the Secretary of the Interior is hereby authorized within one year after the death of the testator to cancel the approval of the will, and the property of the testator shall thereupon descend or be distributed in accordance with the laws of the state wherein the property is located: Provided, further, that the approval of the will and the death of the testator shall not operate to terminate the trust or restrictive period, but the Secretary of the Interior may, in his discretion, cause the lands to be sold and the money derived therefrom, or so much thereof as may be necessary, used for the benefit of the heir or heirs entitled thereto, remove the restrictions, or cause patent in fee to be issued to the devisee or devisees, and pay the moneys to the legatee or legatees either in whole or in part from time to time as he may deem advisable, or use it for their benefit: Provided also, that sections 1 and 2 of this act shall not apply to the Five Civilized Tribes or the Osage Indians.'

"The Secretary of the Interior made regulations which were proper to the exercise of the power conferred upon him and the execution of the act of Congress, and it would seem that no comment is necessary to show that section 8341 is excluded from pertinence or operation.

"But this conclusion counsel resists. He says: 'As long as restrictions have not been removed, the allotment is subject to the plenary power of Congress;' but 'when restrictions are removed, the allotment automatically becomes subject to the state law.' That is, and to make application to the pending case, at the instant his wife died, appellant became heir at law to one-third of her property under the laws of the state. Appellant's reasoning is direct and confident. By his wife's death, he asserts, her allotment was emancipated from government control; that under section 8341 her will was void; she, therefore, died intestate, and he became her heir of an undivided one-third of her allotment under section 8418, set out in the bill.

"And the further contention is that section 8341 is continued because the act of Congress does not expressly provide how the land shall be devised, and because it recognizes that the state laws of descent are applicable in case the Secretary disapproves the will after the death of the testator.

"If the first contention be true, the act of Congress is reduced to impotence by its contradictions. According to the contention, it permits a will, and immediately provides for its defeat at the very instant it is to

take effect and can only take effect. Such antithetical purpose cannot be imputed to Congress, and it is repelled by the words of section 2. They not only permit a will, but define its permissible extent, excluding any limitation or the intrusion of any qualification by state law. They provide that one having an interest 'in any allotment held under trust or other patent containing restrictions on alienation * * * shall have the right prior to the expiration of the trust or restrictive period, and before the issuance of a fee-simple patent or the removal of restrictions, to dispose of **such property** (emphasis ours) by will in accordance with regulations to be prescribed by the Secretary of the Interior. And it is further provided that the Secretary of the Interior may approve or disapprove the will either before or after the death of the testator,' and that neither circumstance shall 'operate to terminate the trust or restrictive period, but the Secretary of the Interior may, in his discretion * * * cause patent in fee to be issued to the devisee or devisees.' * * *

"And we agree with the court of appeals that the act of Congress was the prompting of prudence to 'afford needed protection to dependent and natural heirs against the waste of the estate as the result of an unfortunate marriage, and enforced inheritance by state law'."

In the case of Blundell v. Wallace, supra, cognizance is taken of the case of Blanset v. Cardin, supra, and it is there said:

"Section 23 must be read in the light of this policy; and, so reading it, we agree with the ruling of the state Supreme Court that Congress intended thereby to enable 'the Indian to dispose of his estate on the same footing as any other citizen, with the limitation contained in the proviso thereto.' * * * But here the federal statute contains no provision of like character; it is without qualification except in the single particular set forth in the proviso; and, clearly, it does not stand in the way of the operation of the **local law.**"

Thus it is noted that in the case of Blundell v. Wallace, supra, the closing paragraph states where "the federal statute contains no provision of like character * * * except in the single particular set forth in the proviso." Evidently the court there had in mind the particular proviso in section 23, providing that no will of a full-blood Indian devising real estate shall be valid if such last will and testament disinherits the wife and children of such full-blood Indian unless acknowledged and approved by a judge of the United States court for the Indian Territory or a United States commissioner, or, as later added, "judge of a county court of the state of Oklahoma."

Certainly if Congress had intended that section 23 be an acceptance of the Code of Oklahoma relating to wills, it could have easily done so without any exception or proviso, and there would have been no need of providing a procedure for disinheriting the wife or husband.

It seems to us that Congress in providing a procedure whereby a full-blood member of one of the Five Civilized Tribes might disinherit the husband or wife creates a specific exception to the Oklahoma statute. If Congress did not intend to create an exception, then the provision relating to the wills of full-blood members who attempted to disinherit the wife or husband is only idle and meaningless. It cannot be denied that Congress had the plenary power to provide for the disposition by the Indians of their restricted lands in a manner Congress saw fit, and in our judgment section 23 relating to a full-blood is a federal exception in part and in contravention to section 11224 of the Oklahoma Code.

The word "unless," as used in the proviso of section 23, is the equivalent to and is on parity with "except."

As said in the case of Manning v. Keenan, 73 N. Y. 46, the word "unless" has the force of the word "except." Its primary meaning is unloosened from; so what follows in the sentence after the word "unless" is excepted or unloosened from what went before it. Such a form of expression in a statute sometimes amounts to an affirmative enactment, and in fact, proprio vigore, confers all that is excepted from a negative or restrictive provision.

Judgment is affirmed.

MASON, C. J., and HUNT, HEFNER, CULLISON, and ANDREWS, JJ., concur. CLARK, RILEY, and SWINDALL, JJ., dissent.

CLARK, J. (dissenting.) Section 11224, C. O. S. 1921, provides:

"Every estate and interest in real or personal property to which heirs, husband, widow, or next of kin might succeed, may be disposed of by will; Provided, that no marriage contract in writing has been entered into between the parties; no man while married shall bequeath more than two-thirds of his property away from his wife, nor shall any woman while married bequeath more than two-thirds of her property away from her husband; Provided, further, that no person who is prevented by law from alienating, conveying or encumbering real property while living shall be allowed to bequeath same by will."

This section of the statute was in force at the time the allottee of the land involved in this cause of action died. Jennie George, a member of the Creek Tribe of Indians, prior to her death bequeathed to her husband, Willie George, the sum of $5 by her last will and testament, which was not one-third of her estate. Under this section of the statute she could not devise more than two-thirds of her estate away from her husband. This section of the statute has been construed by this court, and it has been held in a number of cases that a husband cannot devise more than two-thirds of his property away from his wife, or a wife cannot devise more than two-thirds of her property away from her husband.

This being true, upon the death of Jennie George an undivided one-third interest of her estate vested in her husband, Willie George, and he became the owner thereof.

This court in Blundell v. Wallace, 96 Okla. 26, 220 Pac. 40, held this provision of the state is applicable to Indian citizens as well as other citizens of the state. The majority opinion in this cause holds that this section of the statute does not apply to a full-blood Indian citizen of this state. Blundell v. Wallace, supra, was appealed to the Supreme Court of the United States, and it was urged there that section 11224, supra, was in conflict with section 23 of the Act of Congress of April 26, 1906, as amended by the Act of May 27, 1908, sec. 8. Section 23 reads as follows:

"Every person of lawful age and sound mind may by last will and testament devise and bequeath all of his estate, real and personal, and all interest therein; Provided, that no will of a full-blood Indian devising real estate shall be valid, if such last will and testament disinherits the parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States court for the Indian Territory, or a United States commissioner."

The Supreme Court of United States, in an opinion by Mr. Justice Sutherland, reported in 69 L. Ed. 664, passed squarely on this question, and held that section 23, supra, was not in conflict with the Oklahoma statute; that section 23, supra, merely removed existing restrictions and left Indian citizens subject to the provisions of the laws of the state where the Indian was situated, and, therefore, an Indian woman could not will more than two-thirds of her property away from her husband if the state law forbade it.

The opinion in the instant case is diamet-

rically opposed to the holding in the Blundell v. Wallace Case, supra, by this court, which was affirmed by the Supreme Court of United States. The Supreme Court of United States said at page 376 of the opinion:

"A brief reference to the state of the law at the time of the passage of section 23 will help to clear the way for a correct determination of the question. By sections 12 and 16 of the Supplemental Agreement with the Choctaws and Chickasaws, ratified by the Act of July 1, 1902, supra, lands of the kind here involved were declared to be inalienable during specified periods of time. It is settled that this restriction against alienation extended to a disposition by will (Taylor v. Parker, 235 U. S. 42, 59 L. Ed. 121, 35 Sup. Ct. Rep. 22) ; and, but for section 23, it is plain that the devise in question, at least as to the homestead, would have been without effect.

"But, it must be borne in mind, the restriction was in respect of the specified lands, and did not affect the testamentary power of the Indians to dispose of their alienable property, which power, on the contrary, has been fully recognized, first, by an extension of the appropriate laws of Arkansas over the Indian Territory, and then, upon the admission of the state of Oklahoma, by the substitution therefor of Oklahoma law. Taylor v. Parker, supra; Jefferson v. Fink, 247 U. S. 288, 294, 62 L. Ed. 1117, 1123, 38 Sup. Ct. Rep. 516. The general policy of Congress prior to the adoption of section 23 plainly had been to consider the local law of descents and wills applicable to the persons and estates of Indians, except in so far as it was otherwise provided. Thus, by section 2 of the Act of April 28, 1904, chap. 1824, 33 Stat. at L. 573, the laws of Arkansas, theretofore put in force in the Indian Territory, were expressly continued and extended in their operations, so as to embrace all persons and estates in said territory, whether Indian, freedman, or otherwise, and jurisdiction was conferred upon the courts of the territory in the settlement of the estates of decedents, etc., whether Indian, freedmen, or otherwise.

"Section 23 must be read in the light of this policy; and so reading it, we agree with the ruling of the state Supreme Court that Congress intended thereby to enable the Indian to dispose of his estate on the same footing as any other citizen, with the limitation contained in the proviso thereto. The effect of section 23 was to remove a restriction theretofore existing upon the testamentary power of the Indians, leaving the regulatory local law free to operate in the case of other persons and property. There is nothing in Blanset v. Cardin, 256 U. S. 319, 65 L. Ed. 950, 41 Sup. Ct. Rep. 519, cited to the contrary, which militates against this view. That case involved the will of a

Quapaw woman, devising her restricted lands away from her husband. It was held that section 8341 (now sec. 11224) of the Oklahoma laws did not apply because it was in conflict with an act of Congress. But the act there considered was very different from the one now under review. There the authority to dispose of restricted property by will was limited by the provisions of the Act of February 14, 1913, chap. 55, 37 Stat. at L. 678, Comp. Stat. sec. 4228, 3 Fed. Stat. Anno. 2d Ed. p. 855, that the will must be 'in accordance with regulations to be prescribed by the Secretary of the Interior', and that no will 'shall be valid or have any force or effect unless and until it shall have been approved by that officer.' By this language the intent of the Congress to exclude the local law and to establish the regulations of the Secretary as alone controlling was made evident; and it was so held. But here the federal statute contains no provisions of like character; it is without qualification except in the single particular set forth in the proviso; and, clearly, it does not stand in the way of the operation of the local law."

The majority opinion cites as authority the case of Blanset v. Cardin, 256 U. S. 319, 65 L. Ed. 950. This case involved the will of a Quapaw Indian, who was not a member of the Five Civilized Tribes. The will in the case at bar involves the will of a Creek Indian, who was a member of the Five Civilized Tribes. The statute under which the Quapaw woman's will was made, 37 Stat. at L. 678, chap. 55, specifically provides that sections 1 and 2 of this act shall not apply to the Five Civilized Tribes of Indians or the Osage Indians. So the statute under which the Quapaw Indian's will was made specifically provided that it did not apply to the Five Civilized Tribes, and should not be made to apply to the Creek woman's will in the instant case.

The same contention was made before the Supreme Court of United States in Blundell v. Wallace, supra, and the Supreme Court of the United States specifically held that the case of Blanset v. Cardin, supra, did not apply, and was not an authority and did not apply to a member of the Five Civilized Tribes. The Supreme Court said that that case involved the will of the Quapaw woman devising her restricted lands away from her husband. It was held that section 8341, now 11224, of the Oklahoma laws did not apply because it was in conflict with the act of Congress. The act there considered was very different from section 23, supra.

I am of the opinion, under the authorities cited, that the Oklahoma law should be upheld and judgment of the trial court should

be reversed, with directions to enter judgment for the plaintiffs in error.

SWINDALL, J., concurs in the dissent.

---

### On Rehearing.

. Per Curiam: Rehearing denied.

SWINDALL, J. (dissenting). When the opinion of this court was delivered January 6, 1931, Mr. Justice Clark, Mr. Justice Riley, and I dissented. At that time Mr. Justice Clark wrote a dissenting opinion in which I concurred. Since then a petition for rehearing has been filed and this day denied. I now desire to call the attention of my associates to the language of Mr. Justice Holmes, of the Supreme Court of the United States, in a special concurring opinion in the case of Francis Beidler, II, and George Engelking, as Executors of the Last Will and Testament of Francis Beidler, Plaintiffs in Error, v. South Carolina Tax Commission, which opinion was filed November 24, 1930, 51 S. Ct. 54, 75 Law Ed. ——, wherein he said:

"The decisions of last term cited by the Chief Justice seem to sustain the conclusion reached by him. Therefore Mr. Justice Brandeis and I acquiesce, without repeating reasoning that did not prevail with the court."

So, in this case, without repeating the reasoning of Mr. Justice Clark that did not prevail with the majority of this court, I desire to add the following to the views expressed by my associate, Mr. Justice Clark.

At the time the Act of Congress, April 26, 1906, was passed, and at the time the same was amended by the Act of May 27, 1908, there was no restriction in the laws of Oklahoma against a husband or wife disinheriting the other. Section 6168, Statutes of Oklahoma Territory, 1893, and section 6803, Wilson's Statutes of Oklahoma Territory, 1903.

As said by the Supreme Court of the United States in the case of Blundell v. Wallace, 69 L. Ed. 664, it was the intention of Congress at the time of the passage of the acts above mentioned to remove restrictions so that a member of the Five Civilized Tribes could dispose of his property by will according to the laws of the state of Oklahoma, but at that time, under the laws of the state of Oklahoma, a husband or wife could disinherit the other or any of their children. Congress evidently wanted to guard against the exercise of this right by full-blood members of the Five Civilized Tribes, and provided a safeguard against the free

exercise of such right by the proviso appearing in the act. If the law had been as it now reads, Congress in all probability would not have added the proviso, as there would have been no necessity for it.

The Legislature of Oklahoma passed an act which was approved by the Governor on March 27, 1909, amending section 6168, Statutes of Oklahoma, 1893, to provide, among other things, that no married man or married woman while married could bequeath more than two-thirds of his or her property away from the other. This statute as amended was brought forward as section 11224, C. O. S. 1921, which section was in force at the date of the death of Jennie George. It is her will that is involved in this action. The section last mentioned was again amended by the Legislature in 1925, Session Laws of 1925, at page 30. The last amendment is not material here, as it was made after the death of Jennie George.

The Acts of Congress of 1906 and 1908 should be construed in the light of the contemporaneous circumstances and in the light of the Oklahoma law then existing, and not in the light of the Oklahoma law as it now exists.

In my opinion, section 23 of the Act of Congress of April 26, 1906, authorizes any Indian of lawful age and sound mind by last will and testament to devise and bequeath all of his estate, real and personal, and all interest therein, according to the local laws of the state, limited by the proviso that no will of a full-blood Indian devising real estate shall be valid if such last will and testament disinherits the parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States Court for the Indian Territory, or a United States commissioner, or a judge of a county court of the state of Oklahoma. This was not intended to be a limitation or restriction on the operation of the local laws, but a matter of precaution on the part of Congress to protect the Indian and the relatives of the Indian citizen against designing persons who might seek to induce the Indian to will and bequeath his or her property to a stranger and disinherit the parent, wife, spouse, or children of such full-blood Indian; where the state laws did not restrict the citizens of the state in the disposition of their property by will.

The limitation in the proviso was to be in addition to the provisions of the local laws and not a limitation on the operation

thereof which in no way conflicts with the acts of Congress.

The majority opinion follows Blansett v. Cardin, 256 U. S. 319, which was held by the Supreme Court of the United States not to be applicable to the Five Civilized Tribes, in Blundell v. Wallace, supra, where that court said:

"But here the federal statute contains no provision of like character; it is without qualification except in the single particular set forth in the proviso; and, clearly, it does not stand in the way of the operation of the local law."

Since the Supreme Court of the United States has held that the acts of Congress herein mentioned do not stand in the way of the operation of the local law, section 11224, C. O. S. 1921, I see no reason why this court should hold that said acts of Congress do stand in the way of the local law, and in my opinion that is just what the majority opinion holds.

Other cases supporting the view that it was the intention of Congress that the laws of the state of Oklahoma should govern in cases of this nature are: Charles C. Childress, State Auditor, v. John Beavers, 70 L. Ed. (U. S.) 730; Tiger v. Slinker 4 Fed. (2d) 714; Kunkel v. Barnett, 10 Fed. (2d) 804; Jefferson v. Fink, 247 U. S. 288; United States v. Fox, 94 U. S. 315. In the last case, the Supreme Court of the United States says:

"It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent, or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated. * * * The power of the state in this respect follows from her sovereignty within her limits, as to all matters over which jurisdiction has not been expressly or by necessary implication transferred to the federal government. The title and modes of disposition of real property within the state, whether inter vivos or testamentary, are not matters placed under the control of federal authority. Such control would be foreign to the purposes for which the federal government was created, and would seriously embarrass the landed interests of the state."

For the reasons stated by Mr. Justice Clark in his dissenting opinion, supplemented by the reasons herein stated, I cannot concur with the majority of my associates in the opinion filed January 6, 1931, and most respectfully dissent.

I am authorized to say Mr. Justice Riley concurs in this dissent.