## ALEXANDER et al. v. SAMUELS et al.

No. 25009. March 24, 1936.

Rehearing Denied May 26, 1936.

Application for Leave to File Second Petition for Rehearing Denied June 30, 1936.

W. W. Pryor and Hugh M. Sandlin, for plaintiffs in error.

Orr & Woodford, for defendants in error.

〃 〃 〃 〃 〃 〃 〃 M. This is an action in ejectment, brought to recover possession of a two-thirds interest in, and the rents and profits from, certain lands in Hughes county, which were originally allotted to one Nancy Alexander, a full-blood citizen of the Creek Nation. The allottee departed this life July 1, 1922, leaving a surviving husband, one James L. Alexander. By a will made January 4, 1905, which was approved by the United States Commissioner and which was duly probated, the said Nancy Alexander bequeathed and devised her entire estate to her husband, James Alexander. The defendants in error assert title to the premises in controversy through mesne conveyances from the said James L. Alexander.

Plaintiffs in error allege that they are adopted daughters of the allottee, Nancy Alexander, and seek to recover as pretermitted children of said allottee, under the provisions of sections 8054, C. O. S. 1921 (1712, O. S. 1931), and sections 11254 and 11255, C. O. S. 1921 (1569 and 1570, O. S. 1931), which sections read as follows:

Section 8054, C. O. S. 1921 (section 1712, O. S. 1931):

"A child so adopted shall be deemed, for the purposes of inheritance by such child, and his descendants and husband or wife and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption nor property from the lineal or collateral kindred of such parents by right of representation."

Section 11254, C. O. S. 1921 (section 1569, O. S. 1931):

"Whenever a testator has a child born after the making of his will, either in his lifetime or after his death, and dies leaving such child unprovided for by any settlement, and neither provided for nor in any way mentioned in his will, the child succeeds to the same portion of the testator's real and personal property that he would have succeeded to if the testator had died intestate."

Section 11255, C. O. S. 1921 (section 1570, O. S. 1931):

"When any testator omits to provide in his will for any of his children, or for the issue of any deceased child unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate and succeeds thereto as provided in the preceding section."

That Nancy Alexander and James Alexander were wife and husband and had no children of their own, and that they legally adopted the plaintiff in error Judy Alexander in the year 1917, is conceded by all parties to this action. The claim of adoption on the part of the plaintiff in error Mollie Alexander, however, was denied and contested. Directed verdicts were requested by both sides, the trial court sustained the motion of the defendants and directed a verdict in their favor. Plaintiffs appeal. The parties occupy the same positions here as in the trial court, and will hereafter be referred to as plaintiffs and defendants.

For reversal, plaintiffs present six assignments of error and urge them in this court under the following two propositions:

"1. Where an adoption was in fact made, and the papers cannot be found, said adop-

tion may be proved by parol evidence after a showing that the adoption papers are not available.

"2. An adopted child has the same status as a child born of wedlock for all purposes of direct inheritance from the adopting parents and a will of an adopting parent which unintentionally omits to provide for an adopted child is ineffective as to such child."

The plaintiff Mollie Alexander sought to prove by parol evidence the adoption of herself by Nancy Alexander and James Alexander. This proof was offered on the assumption that, since she was unable to locate any proceedings in the office of the court clerk in the county where the adoption was supposed to have taken place, therefore, she would be entitled to offer parol evidence to show that such proceedings had been had. Her offer in this respect, however, was not that of primary proof, but of secondary evidence. This she was not entitled to do. She endeavored to show that such records could not be found, but she failed to introduce any proof of loss or destruction of any records of her alleged adoption, or that there had been any such records in existence; until this primary fact was established, parol evidence was not admissible under the circumstances. As we have said in Coombs v. Cook, 35 Okla. 326, 129 P. 698 (loc. cit. page 330):

"Where, under the provisions of the statute, an adoption is effected by an order of the court, the records of such court constitute the evidence by which such adoption may be established. Quinn v. Quinn, 5 S. D. 328, 58 N. W. 808, 49 Am. St. Rep. 875.

"In the absence of proof of such order of adoption by the court, as provided by the statute, no presumption of adoption will arise from the fact that a child has lived with a person, who is not his parent, and has been treated as a child; but where the records of the court or the adoption papers have been destroyed or lost, proof of the contents of such records or papers by parol testimony then may be made, and circumstantial evidence, including acts and declarations of the adopting parent relative to such adoption, may be admitted. Haworth v Haworth et al., 123 Mo. App. 303, 100 S. W 531; Moore v. Bryant, 10 Tex. Civ. App. 131 31 S. W. 223; Kennedy v. Borah, 226 Ill 243, 80 N. E. 767."

Since the said plaintiff failed to bring herself within the provisions above set forth, and the testimony offered assumed a fact not in evidence, and called for conclusions on the part of the witnesses, the trial court correctly excluded such proffered evidence, and there was no error in directing a verdict against said plaintiff. This disposes of plaintiffs in error's first contention.

This leaves for consideration the right of Judy Alexander, who admittedly was an adopted child of Nancy Alexander at the time of her death. Although the will of Nancy Alexander was executed January 4, 1905, it did not take effect until her death, July 1, 1922, and the law existing at that time controlled the effect of such will, for, as we said in Barber v. Brown, 55 Okla. 34, 154 P. 1156:

"An enrolled Chickasaw freedwoman executed a will on the 4th day of August, 1904, at which time she was without legal authority to convey her allotment by will, and she departed this life on the ____ day of September, 1906, at which time she had authority, under Act of Congress approved April 26, 1906 (34 Stat. 137, c. 1876), to convey her allotment by will. After the death of such testatrix, said will was admitted to probate. Held, that such will was governed by the laws as they existed at the time of the death of said testatrix, and legally devised her property, including her allotment."

If an adopted child is to be treated as one "born," within the provisions of section 11254, C. O. S. 1921 (1569, O. S. 1931), or as one pretermitted under the provisions of section 11255, C. O. S. 1921 (1570, O. S. 1931), then, under the holding of this court in Blundell v. Wallace, 96 Okla. 26, 220 P. 40, subsequently affirmed by the United States Supreme Court in 267 U. S. 373, 45 S. Ct. 247, the will of Nancy Alexander was subject to the limitations contained in the sections above cited. In the case of Spaniard v. Tantom, 131 Okla. 75, 267 P. 623, the effect of the holding in Blundell v. Wallace, supra, was reviewed, and therein this court said:

"Even though the Act of Congress of April 26, 1906, as amended by Act of May 27, 1908, does not prohibit a full-blood Indian, when devising real estate, from disinheriting, by will, grandchildren, a will devising real estate executed by a full-blood Cherokee Indian omitting and failing to provide for her grandchildren, issue of her deceased children, will not, in view of section 11255, C. O. S. 1921, operate to disinherit such grandchildren, unless it appears that such omission was intentional. Unless intentionally omitted, such grandchildren will inherit as provided by said section and section 11256. Such sections are, to this extent, not in conflict with the Act of Congress above mentioned.

"The intention of a person to disinherit

by will his children, or children of his deceased children, must appear from the four corners of the will. Circumstances under which the will was executed cannot be taken into consideration, nor may extrinsic evidence of any character be admitted to establish such intent. The cases of Riley v. Collier, 111 Okla. 130, 238 P. 491, and Courtney v. Daniel, 124 Okla. 46, 253 P. 990, to the extent of conflict herewith, are hereby expressly overruled."

The question thus presented is, in a sense, a novel one in this jurisdiction, since we have not had occasion heretofore to decide the exact point now under discussion. We, however, find that the same question in varying form has been before the courts in a number of other jurisdictions. An examination of the authorities discloses the fact that the decisions involving this question are not in accord; that in those jurisdictions where statutes of adoption are treated as being in derogation of the common law, and consequently strictly construed, the rights of adopted children under the statute of descent and distribution are sharply limited; whereas, in jurisdictions not so fettered, the courts have adopted a more liberal attitude, and have sought to give effect to the spirit and intention of the law, even where it does not come within the strict letter.

Among the authorities supporting this latter view, we find the following cases: Van Brocklin v. Wood (Wash.) 80 P. 530; Flanagan v. Howard (Ill.) 93 Am. St. Rep. 201; Sandon v. Sandon (Wis.) 101 N. W. 1089; Glascott v. Bragg, 111 Wis. 605, 87 N. W. 853, 56 L. R. A. 258; and In re Book's Will, 90 N. J. Eq. 549, 107 Atl. 435. The above cases are authority for the rule which would extend to adopted children the same rights and privileges as accrue by operation of law to children born in lawful wedlock; whereas Davis v. Fogle, 124 Ind. 41, 23 N. E. 860, 7 L. R. A. 485; In re Comassie's Estate, 107 Cal. 1, 40 P. 15, 28 L. R. A. 414; Munday v. Munday (Va.) 178 S. E. 917, 98 A. L. R. 187; Davis v. King, 89 N. C. 441; Go'dstein v. Hammell, 236 Pa. 305, 84 Atl. 772; Russell v. Russell, 84 Atl. 48, 3 So 900, and In re Gregory's Estate, 15 Misc. 407, 37 N. Y. S. 925, are the leading cases from those jurisdictions which apply the rule of strict construction, and deny to adopted children all rights except those expressly granted them by the statute.

We are therefore called upon to decide which line of authority we will follow in the instant case. From an examination of all these authorities it appears to us that the courts adhering to the liberal rule are in the majority, and that their opinions are supported by the better reason, and we therefore adopt the majority rule. In arriving at this conclusion we are governed largely by our statutes in this connection. Section 8054, C. O. S. 1921 (1712, O. S. 1931), of our statutes, expressly provides:

"A child so adopted shall be deemed, for the purposes of inheritance by such child. and his descendants and husband or wife, and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption nor property from the lineal or collateral kindred of such parents by right of representation."

It will be noted that for the purpose of inheritance the rights of such child are placed on a parity with those of children in wedlock, with only two exceptions, neither of which has any application here. A man and wife may be childless; one or both may make a will; and in such event, if thereafter a child is born to them, then, under the provisions of section 11254, C. O. S. 1921 (1569, O. S. 1931), said will or wills as to such child are as if they were nonexistent, in the event such parent or parents die without having otherwise provided for such child in a settlement, in so far as such child is concerned, the parent dies intestate. It will be observed that this is a protection which our law affords a child not in esse, and which may not be in contemplation at the time of the execution of the will, and when the relation of parent and child does not and cannot exist. The law thus anticipates a subsequent act and creation of a status, which at the time was purely in limbo, but might occur in the natural order of events. Since the relation of parent and child, both in nature and under the Codes, usually is created through the process of birth, the legislators evidently saw fit to use the language "a child born," but whether this is symbolical or confined purely to the order of nature, the statute does not say, but, obviously, the phrase means within the law; either pursuant to its sanctions, or else under its protecting aegis. While ordinarily the relation of parent and child is the result of the union of a man and woman, this is by no means exclusive nor universal when viewed from the purely legal aspect. From the earliest times it has been recognized

that, while the relation of parent and child as a natural fact may exist, as a matter of law it should be deemed to have no existence, and likewise such relation may exist by virtue of the law, when it would not exist as a natural condition. We find that this situation prevailed not only among the ancient barbarians, but also among the Jews, and flowered among the Romans. With the rise of feudalism and the supremacy of the common law, the rights of both natural and adopted children were either denied or restricted, and the rights of legitimacy exalted; the pendulum, however, has swung again across the arc to a more liberal attitude in this respect, and hence we have to-day almost universal statutes of adoption whereby the relation of parent and child is created with more or less similarity to the natural relation through the marriage of a man and woman. As pointed out above, our statute, section 8054, C. O. S. 1921 (1712, O. S. 1931), purports to confer upon an adopted child, in so far as his adoptive parents are concerned, all of the rights that he could have had under the law had he been born to them as a result of the marriage union.

We do not know how language could be any stronger than that contained in the above section of the statute, and we are of the opinion that a child adopted pursuant to the statute of this state is to be considered as "born" in lawful wedlock to such adoptive parents, and the only limitations thereon are the exceptions contained within section 8054, C. O. S. 1921 (1712, O. S. 1931).

We, therefore, hold that, since the plaintiff Judy Alexander was admittedly a lawfully adopted child, pursuant to the statutes of this state, of the testatrix, Nancy Alexander, and her husband, James L. Alexander, and since said adoption occurred subsequent to the execution of the will of the said Nancy Alexander, although said will was valid in all other respects and entitled to probate as such, as to the said Judy Alexander the said Nancy Alexander died intestate, the said will being limited by section 11254, C. O. S. 1921 (1569, O. S. 1931); the adoption of the said Judy Alexander, in so far as the relation of the parties was concerned, having the same effect as if she had been "born" to the said Nancy Alexander and her husband, James L. Alexander.

The defendants rely on and quote the language from Walker v. Brown, 43 Okla. 144, 141 P. 681, and Wilson v. Greer, 50

Okla. 387, 151 P. 629, but these cases were overruled by implication in Blundell v. Wallace, 96 Okla. 26, 220 P. 40, and as pointed out in Spaniard v. Tanton, 131 Okla. 75, 267 P. 623.

Since the judgment of the trial court was correct in so far as the plaintiff Mollie Alexander was concerned, and contrary to law in so far as Judy Alexander was concerned, the judgment of the trial court as to Mollie Alexander will be affirmed, and as to Judy Alexander will be reversed, with directions to grant a new trial and proceed consistent with the views herein expressed.

Judgment affirmed in part and reversed in part.

McNEILL, C. J., and BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur.