In re TALLEY'S ESTATE.

HARRIS, Ex'r, v. BURGESS.

No. 29753. Jan. 7, 1941.

*109 P. 2d 495.*

Pryor & Wallace, of Wewoka, for plaintiff in error.

B. B. Blakeney and B. B. Blakeney, Jr., both of Oklahoma City, and J. E. Simpson, of Maud, for defendant in error.

NEFF, J. In the year 1926 James R. Burgess, hereinafter called petitioner, was a boy of 14. By the written consent of himself and his only live parent, and by proper procedure of the county court in accordance with sections 1701 to 1716, O. S. 1931, 10 Okla. St. Ann. §§ 41 to 56, he was adopted by Thomas F. Talley and Cynthia Talley, husband and wife.

Five years later the natural parent filed a petition for adoption in the same county court, praying that petitioner be his adopted child and "be restored to him as the relation stood prior to said

former adoption" and that he be given his original name of James Russell Burgess. To this the petitioner, who was by that time past 18 years of age, filed his written consent, and so did the Talleys. The matter came on for hearing. The petitioner and his natural father and the Talleys all testified that said readoptive arrangement and petition were satisfactory. The court thereupon entered an order approving the petition, and ordering and adjudging that petitioner

"be and he is hereby decreed the legally adopted child of Walter A. Burgess, with all the legal rights and privileges of a natural child restored to said party and it shall be subject to the exclusive care and control of the said adopting parent, and that the name of said child shall be James Russell Burgess, the original name of said child. It is further ordered, adjudged and decreed that the relation of parent and child heretofore created by the decree of this court in adopting said child to T. F. Talley and Cynthia Talley, his wife, become null and void and for all intents and purposes as if the same had never been made and entered by this court."

In the meantime the Talleys had given petitioner 40 acres of land with a house thereon, an automobile, and $500 in cash.

Several years later, on November 17, 1933, at a time when petitioner was 21 years and seven months of age, the Talleys executed a joint and mutual will bequeathing all property of either or both to the survivor, and not mentioning petitioner. Four years later, in 1937, Cynthia Talley died. The will was probated and her estate was decreed to Tom Talley. Then in 1938 Tom Talley executed another will, not mentioning petitioner, in which he bequeathed his entire estate to certain nieces and nephews, and he died about four months later. Petitioner did not contest the probate of or. distribution under either will. The administration of the husband's estate is still pending.

On December 8, 1938, the petitioner filed an application to vacate the final decree of distribution in the Cynthia Talley estate, and summons was served upon E. M. Harris, executor of the husband's estate. Demurrer thereto was sustained by the county court and petitioner appealed to the district court. There the demurrer was overruled and a hearing was had on the merits, over the objection of the executor. The district court held for petitioner, ruling that he was entitled to share in the estate of Cynthia Talley because of the rule that an adopted child omitted, but not intentionally, from the will of an adoptive parent inherits by the laws of intestacy. Alexander v. Samuels, 177 Okla. 323, 58 P. 2d 878, 105 A. L. R. 1171, and statutes therein cited. The executor appeals.

Though other propositions are advanced by the executor, the principal contention, and the one upon which this appeal turns, is whether the petitioner is entitled as a matter of law to inherit from the estate of his deceased former adoptive mother. Section 1712, O. S. 1931, 10 Okla. St. Ann. § 52, appearing within the chapter on adoption and proceedings therefor, provides, with certain exceptions not pertinent here, that a child "so adopted" shall be deemed for the purposes of inheritance as if he had been born to the adoptive parents in lawful wedlock, and in Alexander v. Samuels, supra, it was held that an adopted child inherits from its adoptive parents. But suppose, as in this case, there is a second adoption, *prior to the death of either of the first adoptive parents*. Does the child still inherit from one of said former adoptive parents who thereafter dies? There have been comparatively few decisions of the courts on this question, and we propose briefly to review each of them.

It is obvious that cases are not in point wherein the second adoption takes place after the death of the first adoptive parent. In such a situation the inheritance occurs at the instant of death, if at all. At that time there is no second adoptive parent. There may never be any. The estate vests. It is immaterial whether later a second adoption occurs. Under such circumstances it has been

held, and we think rightly so, that the adopted person inherits from the first adoptive parent. Russell v. Russell, 14 Ky. L. Rep. 236; Patterson v. Browning, 146 Ind. 160, 44 N. E. 993. See the comment on those cases in L. R. A. 1918A, 824, 825. In the case of In re Sutton's Estate, 161 Minn. 426, 201 N. W. 925, the second adoption took place after the death of the first adoptive parent but prior to the death of the first adoptive parent's intestate mother, from whose estate it was held the adopted person should inherit. The court stated, however, that it was a parallel case to Patterson v. Brown, supra, and based its holding mainly on that case.

We find three cases, however, wherein the adopted person inherited from the first adoptive parent although the second adoption took place prior to the death of the first adoptive parent. Holmes v. Curl, 189 Iowa, 246, 178 N. W. 406; Dreyer v. Schrick, 105 Kan. 495, 185 P. 30; Villier v. Watson, 168 Ky. 631, 182 S. W. 869, L. R. A. 1918A, 820. These cases cite and predicate their rulings largely on the Russell and Patterson Cases, supra, which, as we have seen, are distinguishable from this kind of situation, as pointed out by the note in L. R. A. 1918A, at page 825. The remainder of the basis of those cases is this reasoning: that since an adoption places the adopted person in the same inheritance relation to his first adoptive parent as if the latter were his natural parent (from whom he would inherit in spite of a subsequent adoption), it would follow that subsequent adoptions should have no effect on inheritance from former adoptive parents even though the subsequent adoption or adoptions should occur prior to the death of the first adoptive parent. We shall later set forth why we do not feel justified in approving that reasoning, or in carrying our logic to such lengths. In the Villier Case, supra, it was also said that if such were not the rule the adoptive father could take away the adopted person's right of inheritance by procuring some penniless person to readopt the child. But the adoptive father, or even the natural father, at least in this state, could accomplish the same purpose anyway, and much more easily and inexpensively, by simply omitting the adopted person from his will intentionally. There is no question in this case but that the second adoption was with the consent of all parties, and in entire good faith.

The Michigan court, on the other hand, has taken the view that such reasoning is too strict and technical and carries the purposes and intent of the adoption and succession statutes to unwarranted lengths. It was held by that court in the case of In re Klapp's Estate, 197 Mich. 615, 164 N. W. 381, L. R. A. 1918A, 818, that a second adoption occurring prior to the death of the first adoptive parent removes the rights of inheritance which were acquired under the first adoption. It is insisted by petitioner that said decision is based upon a statute necessitating that result, differing from the Oklahoma statute. We do not agree. The statute cited and quoted in the opinion (Compiled Laws 1897, § 8780) went even further in making of the adopted person an heir of the adoptive parent than does our own section 1712, O. S. 1931, 10 Okla. St. Ann. § 52, mentioned above.

In the case of In re Hughes, 88 Okla. 257, 213 P. 79, we held that an order of the county court permitting the adoption of a child is conclusive so far as that court is concerned, and that such court has no further jurisdiction in the matter. We therefore do not base our holding herein on any premise that the first order of adoption was revoked by the second adoption. Nor do we necessarily approve of all that was said by the Michigan court in the Klapp Case, supra, but we here set forth an excerpt from that opinion as explanatory of the reasoning and questions involved in treating the subject:

"No question is raised as to the validity of either adoption proceedings. In fact, it is stated in the briefs that both proceedings are valid. Assuming that the second proceeding is valid, I am of the opinion that, when it was signed and

assented to by the parties and approved by the probate court, it ipso facto had the effect of revoking or superseding the order made in the first proceeding. When the original order was revoked it carried with it all the reciprocal rights and duties which sprang into existence when the order was made. Thereafter the first adoptive father was no longer entitled to the custody of the child; neither was he entitled to its services. He was no longer obligated to care for, educate, and support the child. If the new adoption destroyed these rights and obligations, why did it not destroy the child's right to inherit, since that right was dependent for its existence upon the same assent, the same agreement, which created the other relations? When the reciprocal rights and duties and the right to inherit are all created by the same instrument, signed by the parties and approved by the probate court, by what process of reasoning can the conclusion be reached that a new and second order will put an end to all the rights, duties, and incidents of the contract except the right to inherit? Why should the child's right to inherit remain when the adoptive father is no longer entitled to its custody, companionship, and services, the very things which induced him to make him an heir? If the right to inherit is the one incident of the agreement which survives the second order, then the statute may be used indirectly to create the relation of parent and child, with none of the incidents of that relation except the right to inherit. The statute has not directly provided for the creation of any such relation.

"But, it is argued, how can the child be relieved of its obligations to a *natural* parent and still retain its right to inherit? The reason therefor lies in the fact that at the moment of birth the child's status is fixed by law; at birth the child becomes the issue of the parent, and is included within the provision of the statute which declares all issue shall inherit the property of their parents. In the case of the natural father, the question whether the child shall become his heir is not subject to his assent or contract, and therefore the child's right to inherit from him is not subject to his election. The law irrevocably fixes his status in that respect the moment he is born. In the one case, by no act of the parent can he prevent the child becoming his heir. In the other case, the child cannot become his heir without his consent. One situation depends upon blood and birth; the other upon consent and contract.

"If, as counsel for appellee insist, the doctrine of 'once in grace always in grace' controls, and 'once adopted always adopted' is to be the rule, I think we should hold that under the statute there can be no legal readoption during the lives of the adoptive parents. This would be an unfortunate rule, and would doubtless work a hardship in many cases."

Sufficient cases have not yet been adjudicated on the precise question before us to warrant the assertion that any well-settled rule of law exists on the question. While the view which we take herein is slightly in the numerical minority at this time, we believe that it is the sounder and more reasonable one. All of the three decisions cited above, holding to the contrary, relied considerably on cases which were not in point, as has been shown, and, for the remainder, on a strict and extremely technical application of the law which in our opinion was never intended by the law-making bodies. A distinction which was overlooked in those cases, and which could well have been emphasized in the case of In re Klapp's Estate, supra, is that one cannot occupy the status of an adopted child to two different sets of adoptive parents at the same time, while, on the contrary, he can be and is the adopted child of his adoptive parents and the natural child or "issue" of his natural parents at the same time. When he is adopted he is still the natural son of his natural parents nevertheless, even though his control is taken from them. When he is adopted the second time, is he still the adopted son of his first adoptive parents? Clearly not. It is no answer to this to say that the statute makes an adopted child, for the purpose of inheritance, the same as a natural child, for when he is adopted by the second adoptive parents he is no longer "the adopted child" of the first adoptive parents. We do not believe that the

Legislature could have intended that he then remained "a child so adopted", within the meaning of the statute. But by no number of adoptions could he be said to lose his existence as the natural child or issue of his natural father.

Conceding that the second order of adoption did not "revoke" the former *order*, or, as the Michigan court, probably for the lack of a better name, said, "supersede" it, the fact is undeniable that it did something to the former *status* and relationship. Neither in theory, practice, nor common sense was petitioner the adopted son of his first adoptive parents after his second adoption. Having lost that relationship (a thing which by parallel he could not entirely do, at least as to blood, as to his natural parent) there was no longer any predicate upon which to base the conclusion that he would thereafter inherit from his first adoptive parents the same as if he had been their natural son.

For the reasons given, the judgment is reversed and the cause is remanded, with directions to dismiss the petition.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, OSBORN, CORN, GIBSON, HURST, and DAVISON, JJ., concur.